[Civil No. 1382. Filed March 31, 1915.]

[147 Pac. 701.]

MARY M. COSTELLO, as Executrix of the Estate of MAR-
TIN COSTELLO, Deceased, Appellant, v. MARY
AILEEN CUNNINGHAM and PATRICIA JULIA
CUNNINGHAM, Minors, by and through EMIL
MARKS, as Guardian of the Estates of Said Minors,
Appellees.

1. EXECUTORS AND ADMINISTRATORS—JUDGMENT OF PROBATE COURT—
CONCLUSIVENESS.—Where defendant's testator, who acquired the title
to mining claims under an agreement whereby he was bound to ac-
count for a share in the proceeds of a sale thereof to C., made a
compromise and settlement with C.'s widow as heir and adminis-
tratrix of C. and as guardian of their minor children, which com-
promise and settlement was approved and confirmed by the probate
court, such order of the probate court was final until reversed or
vacated, and the compromise and settlement could not be attacked
on the ground that an amount retained from C.'s share and paid to
an attorney employed by C. and defendant's testator was fraudulent,
unfair and unjust.

2. EXECUTORS AND ADMINISTRATORS—JUDGMENT OF PROBATE COURT—
CONCLUSIVENESS.—Where defendant's testator, who under an agree-
ment with C. was bound to account for one-half of the net proceeds
of a sale of certain mining claims, settled with C.'s widow and
administratrix by paying what he claimed was C.'s share of the
proceeds of a sale of such claims, such settlement and an order of
the probate court, approving and confirming it, did not affect the
equitable title of C.'s heirs in other mining claims, the title to which
was held by defendant's testator in trust for himself and C. as
tenants in common, as the interest of the heirs was real estate, and,
there having been no necessity for the sale of such claims for the
payment of debts and expenses of administration, neither the ad-
ministratrix nor the probate court could divest the title of the heirs,
even though it was intended to do so.

3. TRUSTS—ENFORCEMENT—PROPER PARTIES.—In an action for an ac-
counting with respect to the mining claims so held in trust and
sold by defendant's testator subsequent to C.'s death, C.'s heirs
were the real parties in interest and entitled to maintain the suit,
and C.'s administratrix was not the proper plaintiff, the estate hav-
ing no enforceable interest in the subject matter nor in the purpose
of the suit, and the rights of all parties being determinable without
the presence of the estate.

4. TENANCY IN COMMON — TRUSTS — CONSTRUCTION AND OPERATION OF TRUST AGREEMENT.—An agreement between C. and defendant's testator, whereby they were to acquire mining claims by purchase and location, the title to which was to be taken in the name of defendant's testator, in trust for the use and benefit of him and C., created a relation of trustee and beneficiary and also a relation of tenants in common of the property.

5. APPEAL AND ERROR—JURY TRIAL—WAIVER.—In an action for an accounting with respect to the proceeds of sales of mining claims held by defendant's testator in trust for himself and plaintiffs' ancestor, it was stipulated that the jury need not return a general verdict, and upon the return by the jury of answers to special interrogatories it was further stipulated that such special findings might be taken and held to be the jury's verdict and recorded. Defendant moved for judgment notwithstanding the verdict, and gave notice that she would later submit findings. Upon stipulation of the parties it was ordered that plaintiffs should have until a specified date to file their opening brief and proposed findings, that defendant should then have until a specified date to file her reply brief and proposed findings, and that plaintiffs should then have until a certain date to file their closing brief, and that the cause should stand submitted on the filing of such closing brief. *Held*, that plaintiffs, having treated the special verdict as advisory only, and having made no contention in the trial court that the verdict was binding, waived the benefits of a jury trial, and on appeal the cause would be considered as though tried by the court without a jury.

6. TRIAL—TRIAL BY COURT—FINDINGS OF FACT AND CONCLUSIONS OF LAW.—Under Civil Code of 1901, paragraph 1406, as amended by Laws of 1907, chapter 74, section 4, providing that the trial court may make findings of fact in any case tried without a jury, and that such findings shall become a part of the record of the case, whether findings of fact shall be stated is within the discretion of the trial court, and the court is not required to state a separate decision thereon, and hence the failure to state conclusions of law separately from the findings of fact was not error.

7. TRUSTS—EVIDENCE TO ESTABLISH TRUST—SUFFICIENCY.—In a suit for an accounting with respect to the proceeds of a sale of mining claims which plaintiffs claimed were acquired by defendant's testator and C. under an agreement whereby title was taken in the name of defendant's testator and he was to hold the claims in trust for himself and C. as tenants in common, the burden was upon plaintiffs to establish, by clear and convincing evidence, C.'s ownership of the mines as alleged, the presumption being that the holder of the record paper title was the owner of the whole estate, and they could recover only upon the strength of their own title, and not upon the weakness of defendant's title.

8. Trusts — Evidence to Establish Trust — Sufficiency. — Evidence that C. paid one-half of the purchase price of certain mining claims, title to which was taken in the name of defendant's testator, that he performed the assessment work thereon, paid for having them surveyed with other mines, and claimed an interest in them, and that defendant's testator did not deny the claim when made to him or in his presence, justified the inference that title was acquired pursuant to a previous understanding between C. and defendant's testator that they were co-owners of the mines, and that defendant's testator held the title in trust for himself and C.

9. Trusts—Evidence to Establish Trust—Sufficiency.—Under Civil Code of 1901, paragraph 721, providing that no estate of inheritance or freehold or for a term of more than one year shall be conveyed unless the conveyance be declared by an instrument in writing, subscribed and delivered by the party disposing thereof, or by his agent thereunto authorized by writing, evidence that defendant's testator stated that C. was his partner in certain mines, and that C. owned a half interest therein, was not sufficient to sustain a finding that C. was a co-owner with defendant's testator, or that defendant's testator held title in trust for himself and C., as such declarations did not establish that title was acquired pursuant to an agreement whereby defendant's testator was to hold the claims in trust for himself and C., nor could they have the effect of transferring any interest in the claims to C., if he had no interest when the claims were acquired.

10. Appeal and Error—Trial—Evidence—Reopening Case.—A motion to reopen the trial of a cause for the purpose of hearing additional testimony after the close of the evidence and after the submission of the cause for decision, was addressed to the sound legal discretion of the trial court, and the exercise of such discretion was not reversible except upon a clear showing of abuse.

[As to right to jury trial in action to declare resulting trust, see note in Ann. Cas. 1913C, 153. As to proof of express trust by written declarations of trustee, see note in Ann. Cas. 1913B, 1023.]

APPEAL from a judgment of the Superior Court of the County of Cochise. Frank O. Smith, Judge. Reversed and remanded.

STATEMENT OF FACTS BY THE COURT.

This action was commenced on April 5, 1912, by Mary Aileen and Patricia Julia Cunningham, minors, as the heirs at law of Patrick Cunningham, deceased, by the guardian of their estate, Emil Marks, against the estate of Martin Costello and Mary M. Costello, as the executrix of the last will of Martin Costello, deceased, seeking an accounting for the

net proceeds of the sales of 17 mines situate in the Warren mining district in Cochise County, Arizona, alleged to have been acquired by said Patrick Cunningham and Martin Costello in their lifetime pursuant to an agreement entered into by them in the year 1891. The said agreement upon which plaintiffs base their right to recover is set forth in the complaint, as follows:

"It was agreed that the said Costello should acquire the other undivided one-half of said claims [the claims referred to being the following named mines: Senator, Senator No. 2, Hope, Wagner and Pride, of which Patrick Cunningham was then the alleged owner of an undivided half interest], and that the said Costello and Cunningham should own said five claims in common, and that the said Costello and Cunningham should proceed further to acquire by purchase and location other mining claims in the vicinity of said five claims above mentioned, which claims, so purchased and located, should be owned by said Cunningham and Costello in common, and that the title to said five claims above named, and to all other claims so acquired, should be vested in the name of said Martin Costello, to be held by the said Martin Costello in trust for the use and benefit of said tenants in common."

It is alleged that in pursuance to said agreement Costello did purchase the other half interest in said five claims; also the said parties purchased four adjoining claims named, Irish Mag, George Washington, Old Republican and Angel, for the sum and purchase price of $6,000, to be paid out of the proceeds of a sale of said four claims; also they purchased the Buckeye claim for the sum of $300; also they purchased the Giberalta claim for the sum of $1,000, each paying $500 of the purchase price; also that they located the Supplement, the Leo and the Roy claims, and contributed equally of the expenses of such locations; also that they purchased the Hattie Manchester claim for $250, the whole sum of which purchase price was paid by Cunningham, and they also purchased the Belflower and Smogler claims for the sum of $1,000, each paying one-half of the purchase price; that the parties, pursuant to said agreement, caused the record titles to all of said unpatented claims to be vested in Martin Costello to be held by him as aforesaid. It is further alleged: That the said parties proceeded to and continued to perform the annual

work on all of said mining claims, and to perform the patent work thereon up to the time of the death of Patrick Cunningham, and thereafter Martin Costello continued to perform the necessary annual work and further patent work on the claims sufficient to warrant the issuance of patents therefor. That each contributed his portion of the said expenditures up to the time of Cunningham's death. That patents were issued to, and in the name of, Martin Costello, to the claims on the dates as follows: to the Giberalta, March 11, 1895; to the Hope and Wagner, May 24, 1895; to the Senator, Senator No. 2, Buckeye, and Pride, June 4, 1895; to the Irish Mag, November 3, 1899; to the George Washington, Angel and Old Republican, November 3, 1899; to the Belflower and Smogler, March 1, 1900; to the Hattie Manchester, March 1, 1900; to the Supplement, May 1, 1905; and to the Leo and Roy, October 18, 1905. Plaintiffs allege:

"That after the death of said Patrick Cunningham, the said Martin Costello sold all the said mining claims at the times, in the manner, and for the amounts hereinafter specified, and received the proceeds of such sales, and that from the time he received such proceeds, he held the same in like manner and under the same agreement and trusts under which he held said mining claims, to wit: in trust for the use and benefit of said tenants in common, being himself and the said heirs of said Patrick Cunningham."

It is alleged and not controverted: That Patrick Cunningham died intestate July 1, 1899. That his heirs at law are his surviving wife, Julia Cunningham, and Mary Aileen Cunningham, an infant daughter of tender years, and Patricia Julia Cunningham, who was born to the surviving wife about four months after his death. That on May 17, 1900, Julia Cunningham was appointed, and on May 18, 1900, she duly qualified as administratrix of the estate of said Patrick Cunningham, deceased, and was duly discharged as such on the 20th day of August, 1901. That Costello sold the Irish Mag, Old Republican, Angel and George Washington, patented mines, on November 9, 1899, for $200,000, and on the same date sold the Buckeye, Senator, Senator No. 2, Pride, Hope, Wagner and Giberalta, patented mines, for $300,000. That the purchase prices of which said mines were paid to him at the times and in the amounts following, viz.: Novem-

ber 9, 1899, 10 per cent, April 1, 1901, 70 per cent and April 1, 1902, 20 per cent. That on the 16th day of May, 1901, Julia Cunningham was duly appointed guardian of the estates of Mary Aileen and Patricia Julia Cunningham, and performed the duties of such guardian until March 14, 1912, when her letters were revoked and Emil Marks succeeded her as such guardian. That Costello sold the Supplement, Hattie Manchester, Belflower and Smogler patented mines, March 2, 1903, for $75,000 each, or for $300,000, and received payment therefor 25 per cent March 2, 1903, and the remaining 75 per cent September 2, 1904. That he sold the Leo and Roy, patented mines, May 14, 1904, for the sum of $169,112, and received payments therefor as follows: 10 per cent April 26, 1904, 10 per cent April 28, 1905, and 80 per cent October 26, 1906. That the total proceeds of the sales of all 17 of said mines was $969,112.

Plaintiffs allege that they are entitled to one-half of said total sum, viz.: to the sum of $484,556, and for one-half of the purchase money paid by Patrick Cunningham for the Hattie Manchester, viz.: $125, and for one-half of the purchase money paid by Patrick Cunningham for the Belflower and Smogler mines, viz.: $300, making a total sum of $485,181, less a credit of $87,492, paid by Costello to Julia Cunningham as administratrix of the estate of Patrick Cunningham, and as an heir at law of said decedent and as guardian of the estates of said minors, and a further credit for expenditures laid out by Costello for work performed and for purchasing and patenting expenses and attorney's fees, amounting to not to exceed $100,000, one-half of which is justly chargeable to the estate of Patrick Cunningham, viz.: $50,000, claiming a balance due of $347,689, and interest thereon at the rate of 6 per cent from the date of the receipt of the proceeds of said sales. It is alleged that Julia Cunningham received the sum of $87,492, as above stated, and administered the same, and upon the discharge of all the obligations of said estate and a distribution of said moneys she was discharged as administratrix of said estate. That the said sum and balance claimed is after-discovered assets to which the heirs at law are entitled. That Julia Cunningham has sold, assigned and transferred to said Mary Aileen and Patricia Julia Cunningham all her right, title, claim and interest in and to the pro-

ceeds of the sales of said mines and the damages for the retention of the moneys, and that they, the said Mary Aileen and Patricia Julia, are the owners of said claims. It is alleged, and not controverted, that Martin Costello died on the 15th day of September, 1911, testate, leaving a will by which Mary M. Costello was designated as executrix of his will; that the said will was admitted to probate; that on October 8, 1911, said Mary M. Costello was duly appointed executrix of said will; that she immediately qualified as such executrix, and her letters have never been revoked; that on the 16th day of October, 1911, said executrix published notice to creditors of the estate of Martin Costello to present their claims to said executrix within 10 months from the date of the first publication of such notice, and that plaintiffs did, on the 26th day of March, 1912, duly present the above-mentioned claim for allowance, but that on the same date the said claim was rejected and disallowed by the said executrix.

The defendant pleaded in abatement defect of parties plaintiff, in that Julia Cunningham is a necessary party plaintiff and is not joined as such. This plea was overruled by the court and such ruling is not assigned as error by the defendant. Defendant demurred upon a number of grounds, and all demurrers were overruled. The first special demurrer alleges that "it appears upon the face of said complaint that plaintiffs have no legal capacity to sue therein," and that the administrator of the estate of Patrick Cunningham is a necessary party. The order overruling this demurrer is assigned as error. The orders overruling other demurrers are not assigned as error. The defendant, pleading to the merits of the case, denies in one form or another all the allegations of the complaint which relate to or set forth the interest of Patrick Cunningham, his estate and his heirs, in the claim to any interest in other of the 17 mines than the Senator, Senator No. 2, Hope, Wagner, Pride and Giberalta mines. The answer denies that Patrick Cunningham had any right, title or interest in the other mines named in the complaint, or that his estate or heirs had or have any right, title, interest or claim, legal or equitable, in the proceeds of the sale of such other mines; denies that any of said other mines were acquired by purchase or location in Costello's name in pursuance of any agreement entered into between Costello and

Cunningham; denies that Patrick Cunningham contributed any part of the purchase price of the Belflower, Smogler, Irish Mag, George Washington, Old Republican, Angel, Buckeye or Hattie Manchester; denies that Cunningham contributed any part of the expenses of locating the Leo, Roy or Supplement; and denies that Cunningham ever contributed any of the expenses of performing the annual assessment or patent work on said claims. In other words, the answer denies all allegations of the complaint setting up the manner and means by which it is alleged that Patrick Cunningham acquired an interest in the last-mentioned eleven mines, the agreement by which the title thereto was conveyed to and held by Costello in his name as trustee. The defendant admits that the estate of Patrick Cunningham did own an equitable undivided half interest in and to the net proceeds of a sale of said Wagner group of six mines; that such interest arose from a contract entered into between Cunningham and Costello; that such contract is alleged to be as follows:

"That the said Cunningham should convey to said Costello, his said undivided one-half interest in and to said Senator, Senator No. 2, Pride, Hope, Wagner and Giberalta mining claims, and that the said Costello should thereafter, in his own name, apply for and receive patents from the United States for each and all of said claims, and that said parties, after the conveyance of said interest by Cunningham to Costello, should share equally in the necessary expenses of assessment work, the work to be done upon said claims, to secure patents therefor, and in the attorney's fees, costs and expenses incident to procuring said patents, and that said Martin Costello should thereafter market and sell said mining claims, and charge against the sale price thereof any expenses incurred by him in marketing and selling the same. That . . . it was further agreed and understood between said parties that when said mining claims were so sold by said Costello, he should account to said Patrick Cunningham for one-half of the net proceeds of the sale of said six claims, over and above the disbursements theretofore and thereafter made by said Cunningham to said Costello, respectively, in connection with said claims as aforesaid."

At about the date of said agreement it is alleged that another agreement was entered into between Costello and Cunningham on one part and James Reilly, "whereby it was agreed and understood that said Reilly should perform the necessary legal services in connection with the maintenance and patenting of said mining claims and the preservation and maintenance of the title thereto, and in connection with the marketing and sale thereof, in consideration whereof he should receive 30 per cent of the net proceeds arising from the sale of said claims over and above the amount expended, or to be expended, by said Cunningham and said Costello, respectively, in the purchase of said claims, assessment and patent work thereon, and in or about the maintenance, preservation, patenting, marketing or sale of said mining claims."

It is then alleged: That the said six mining claims were sold by Costello pursuant to said agreement for the total sum of $247,776.80. That before the purchase price had been received by Costello a controversy arose, between Costello and Julia Cunningham as heir and administratrix of the estate of Patrick Cunningham, deceased, and as guardian of the persons and estates of plaintiffs, concerning the settlement and accounting of Costello with said Julia Cunningham, as aforesaid, for the moneys in Costello's hands payable to said estate and the heirs of said Patrick Cunningham. That said Julia Cunningham, as such heir, administratrix and guardian, then and there claimed and asserted to said Costello that said Costello held in trust for the estate of Patrick Cunningham, deceased, and his heirs, an undivided one-half interest in and to each and all of the mining claims mentioned in the complaint. The said Martin Costello then and there repudiated and denied said claims of Julia Cunningham, and claimed and asserted that the only trust he held for the estate of Patrick Cunningham, or his heirs, was that arising upon the sale of the above-mentioned Wagner group of six claims for an undivided one-half of the net proceeds of such sale, after repaying to said Costello and said Cunningham the respective amounts which they had contributed to the purchase, maintenance, patenting and marketing of said claims, and for the legal services furnished and rendered by James Reilly in connection therewith. That during the year 1901 a final and complete accounting, settlement and compromise was

made and concluded by and between said Martin Costello and said Julia Cunningham, as aforesaid, and in and by said accounting, settlement and compromise, said Costello agreed to pay, and said Julia Cunningham, as aforesaid, agreed to accept from said Martin Costello, the following sums of money: The sum of $57,816.40 as guardian of the estate of Mary Aileen and Patricia Julia Cunningham, minors, paid during the year 1901, and the further sum of $28,908.20, paid during said year to Julia Cunningham as heir and as administratrix of the estate of Patrick Cunningham, deceased. That said payments were made and accepted pursuant to said agreement, and Julia Cunningham, as said guardian and as such heir and administratrix, by her deeds acknowledged full satisfaction of all and every claim that she, as such heir and as such administratrix, or as widow of said Patrick Cunningham, deceased, and as such guardian, then had or might thereafter have against Martin Costello on account of any, every and all dealings of trust or otherwise between the said Martin Costello and the said Patrick Cunningham. That said agreement of compromise and settlement was by the probate court and judge thereof fully authorized and approved. That thereafter during the year 1901, said Julia Cunningham as such administratrix made due report to said probate court of said accounting, settlement and compromise, and of her receipt of the moneys paid to her thereon, and upon hearing her action in that behalf was, by said court, duly approved and confirmed. That Julia Cunningham as said guardian made due report to said court of said accounting, settlement and compromise, and of her receipt of the moneys aforesaid, and the said probate court, upon notice and hearing, duly approved and confirmed said guardian's acts in that respect. That Martin Costello paid to said James Reilly the sum of $36,396 out of the one-half of the proceeds of the sale of said six claims as the amount payable to him in pursuance to the terms of said agreement of compromise and settlement, and pursuant to the said contract of Cunningham and Costello with the said Reilly. That the said compromise and settlement aforesaid, and the payment by Costello to and acceptance by Julia Cunningham as aforesaid of, the moneys as aforesaid, and the approval and confirmation of the settlement and compromise by the probate court terminated and

settled all relations of trust and confidence theretofore exist-
ing between Martin Costelló and the estate of Patrick Cun-
ningham, deceased. That at all times since the said account-
ing, compromise and settlement aforesaid, and during the
remainder of his life, Martin Costello openly, consistently
and unequivocally, and to the knowledge of Julia Cunning-
ham, denied and repudiated any and all further claims against
him on behalf of the estate or the heirs of Patrick Cunning-
ham, deceased, whether arising as alleged in the complaint
herein or otherwise, which said attitude on the part of Martin
Costello was consistently maintained for a period of more
than 10 years prior to the filing of this action. That Julia
Cunningham, as such heir, and as such guardian, has per-
mitted such accounting, settlement and compromise to remain
unchallenged and unassailed for the period of upwards of
10 years after the same was concluded, no legal impediment
existing, and having full knowledge and notice of all of the
alleged matters and things which are complained of in the
complaint herein, and delayed filing this action until after
the death of said Martin Costello and until after the death
of James Reilly, notwithstanding that Julia Cunningham
well knew that said Costello and said Reilly were the only
other living persons having full knowledge of the various
matters and transactions involved in this action. That by
reason of such knowledge, accounting, compromise, settle-
ment, receipt of the moneys and delay aforesaid, plaintiffs
herein and their alleged assignor are, and should be, held
forever barred and estopped to maintain this action, or to
have, or recover, any relief herein, either as prayed in said
complaint or otherwise.

It is alleged that, except as to the Wagner group of six
mines in the answer mentioned, Patrick Cunningham, de-
ceased, nor his estate, nor his heirs at law, ever became or
were entitled to any of the proceeds of the sale of any of the
mines mentioned in the complaint; that Patrick Cunningham,
deceased, nor his heirs, nor his estate at any time, had or held
any estate or interest, either legal or equitable, in or to any
of the mining claims mentioned in the complaint, or of the
proceeds of the sale thereof at any time after the legal title
thereto was vested in Martin Costello, except as set forth in

the answer, viz.: the Wagner group of six mines for which plaintiffs have received payment.

Plaintiffs reply to the new matter, deny that the settlement and compromise pleaded in the answer was other than a settlement of the proceeds of the sale of the Wagner group of six mines, and allege that such accounting and settlement was a partial accounting and settlement having reference only to the proceeds of the sale of said Wagner group of six mines; that Julia Cunningham as heir, administratrix and guardian, was induced to sign acquittances and releases to Martin Costello and report the same to the probate court by false and fraudulent representations and by threats and undue influence made to and exerted over her by Martin Costello, and by promises made to her by Costello, to the effect that such releases would not have the effect and should not be treated as depriving her as heir, administratrix or guardian of any rights to the proceeds of the sale of other of the mines than the Wagner group of six mines mentioned in the releases; that the said accounting and settlement was a fraud upon plaintiffs' rights in respect to the item of attorney's fees of $36,396 held by Costello from the heirs and estate of Patrick Cunningham, in that said Patrick Cunningham, deceased, nor his estate, ever became liable to pay the same, and that Julia Cunningham as aforesaid was induced to allow Costello to deduct said amount from the sum due to said plaintiffs by threats and undue influence made and exerted by Costello at the time receipts were signed, and as a condition of payment of anything to her.

The plaintiffs reassert their interest in the entire group of 17 mines and their right to have an accounting notwithstanding the releases for the proceeds of the sale of all said mines, and for judgment as prayed in the complaint. The delay in commencing the action is excused by reason of statements made by Costello to Julia Cunningham, as aforesaid, assuring her that she and the other parties interested in the estate of Patrick Cunningham, deceased, would receive from him all their interest in the proceeds of the sales of said other mines, which said assurances were given by Costello up to the time of his death, and the right to claim such interest was never denied nor the trust repudiated by Costello during his lifetime: that the executrix denied such interest upon presentation of a claim made therefor after the death of Costello.

Upon the issues made by the pleadings thus summarized the cause was tried. For the purpose of the trial a jury was called, impaneled and sworn, heard the evidence, and a large number of interrogatories were propounded to the jury, and as a special verdict answers thereto were returned by the jury. Upon a return of such verdict both sides moved for judgment, which motions were denied. Thereupon the cause was submitted to the court for decision. Before the cause was decided the defendant moved to reopen the cause for the taking of additional evidence, newly discovered, which was denied. Thereafter the court made and filed special findings of facts and conclusions of law, and ordered judgment. Judgment was rendered in favor of the plaintiffs for the sum of $51,065.80, as plaintiffs' share of the net proceeds of the sales of the Irish Mag group and the Belflower and Smogler mines, with interest thereon as damages at the rate of 6 per cent per annum to September 16, 1911, a total sum of $124,868.37, and costs, with directions to pay said sum to the plaintiffs.

Defendant moved for a new trial which was refused. She moved in arrest of judgment, which was denied. Thereupon she appealed from said judgment and orders refusing a new trial and refusing to arrest such judgment. The plaintiffs have appealed from the judgment alone. Both appeals have been argued and presented as one case, but care has been taken to submit the two appeals separately.

Other facts are sufficiently stated in the opinion.

Mr. Joseph Scott, Mr. Ben Goodrich, Messrs. Ellinwood & Ross, Messrs. Williams & Flanigan and Mr. Lee O. Woolery, for Defendant-Appellant.

Mr. Eugene S. Ives and Mr. C. Roy Morfoot, for Plaintiffs-Appellees.

CUNNINGHAM, J.—Reference to the parties will be made as they appeared in the complaint, as plaintiffs and defendant, for convenience.

The theory of the cause as presented by the complaint is that Patrick Cunningham acquired and owned an undivided

one-half interest in the 17 mines with Martin Costello; that Costello held the record titles in his name, and that Cunningham's title is equitable in its nature, based upon a contract made between Costello and Cunningham; that Costello procured the record titles to the mines in his name pursuant to such contract, and held title pursuant to the terms of the contract as to Cunningham, in trust for the use and benefit of Costello and Cunningham; that Costello sold and conveyed the whole estate, and received the proceeds of such sale; that the plaintiffs, the owners of the Cunningham interests in the property, have elected to ratify the sales made by Costello and claim their rights in the proceeds of the sales in lieu of their equity in the property in the hands of the purchasers. The defendant denies the right of the plaintiffs to recover anything upon any theory. She admits a contract was entered into between Martin Costello and Patrick Cunningham, pursuant to which Cunningham conveyed an undivided one-half interest in the Wagner group of six mines to Costello for the purpose of Costello's holding of the record title thereto, to facilitate the procuring of United States patents and to facilitate a sale of the property. Pursuant to said contract Costello became obligated to account to Cunningham only after a sale of said mines was made, and then only for one-half of the net proceeds of such sale, after deducting from the proceeds certain expenditures. The defendant denies that Cunningham owned any interest in the remaining eleven mines at any time, and denies all liability to account to plaintiffs for the proceeds of the sales of said eleven mines. Defendant, while confessing a liability to account for the proceeds of the sale of the Wagner group of six mines, alleges that such accounting was made with Julia Cunningham as heir, guardian of the estates of the plaintiffs, and as administratrix of the estate of Patrick Cunningham, deceased, and all matters in controversy existing between Costello and the said Julia Cunningham in her several capacities, were settled, adjusted and compromised; that Costello paid to said Julia Cunningham, as aforesaid, the moneys then found to be due and payable on account of all matters and dealings of trust and confidence between Costello and Patrick Cunningham; that Julia Cunningham, as aforesaid, received and accepted the moneys so paid in satisfaction of all such dealings of con-

fidence and trust, and executed and delivered to Martin Costello her deed of acknowledgment, release, satisfaction and discharge of the said dealings aforesaid; and that her actions in this respect were reported by her to the probate court of Cochise county, and upon notice and hearing such report was approved, and her acts were, by an order of said court, duly confirmed. The plaintiffs admit that an accounting was had by Costello and Julia Cunningham in her several capacities as alleged by defendant; that Julia Cunningham received the money to the amount alleged; that she executed and delivered releases and acquittances on their faces purporting to be in settlement and compromise of all dealings of trust and confidence between Costello and Cunningham, and that her acts in that behalf were reported to the probate court and by said court approved and confirmed, but that said settlement was in effect only a partial accounting and a settlement and accounting for the proceeds of the sale of the Wagner group of six claims; that such settlement was unfair and fraudulent upon the rights of plaintiffs in the particular that by false and fraudulent representations and by undue influence and promises made and exerted by Costello, Julia Cunningham was induced to execute and deliver the said deeds of release and report said acts to the probate court, purporting on their faces to be in satisfaction and discharge of all dealings of trust and confidence between Costello and Cunningham, and that by such false and fraudulent representations and promises, and threats made by Costello, Julia Cunningham, as such representative, was induced to allow as a credit to Costello the sum of $36,396 out of said net proceeds belonging to said estate, as an attorney's fee to James Reilly, which was unjust, unfair and fraudulent. Defendant alleges that Reilly was employed by Costello and Cunningham to perform, and he did perform pursuant to such contract of employment, legal services in connection with the Wagner group of claims. The contract of employment provided that Reilly's compensation should be 30 per cent of the net proceeds of the sale of the mines, and that said sum of $36,396 was equal to said 30 per cent of Cunningham's interest in the proceeds of the sale of the Wagner group, and was the sum agreed to be paid and payable out of Cunningham's interest. Plaintiffs do not deny the making of the

Reilly contract, except that the credit claimed and allowed to Costello for that purpose was fraudulent, unfair and unjust, the entire attorney's fee being $72,792. The pleadings have separated the 17 mines into two distinct groups: first, the Wagner group of six mines; and, second, the other eleven mines.

The issues raised by the pleadings upon the Wagner group are simple, and may be disposed of in a few words. The defendant clearly pleads an adjudication by the probate court of the controverted questions of the matter of accounting for the proceeds of the sale of that property. The plaintiffs do not controvert the fact that the compromise and settlement was approved and confirmed by the court upon the report of Julia Cunningham. As a matter of law, such order of the probate court was final upon all matters acted upon until reversed or vacated. Plaintiffs do not contend that the order has been reversed or vacated. One of the matters directly involved was the charge for attorney's fees, to be paid Reilly according to the terms of his contract of employment. The contract of employment is not denied by the plaintiffs; hence they are in no position to attack the settlement until the order confirming such settlement is vacated. The matter of settlement and compromise and its approval and confirmation are peculiarly within the jurisdiction of the probate court. The plaintiffs have raised no issues of fact for trial relating to the Wagner group of six claims, as by the admissions in the pleadings the defendant testator has accounted for his trust in that respect. The settlement and compromise could only affect the Wagner group of six mines, for the reason the defendant in her pleadings definitely limits such settlement and compromise to the proceeds of the sales of that group. For defense as to the claim of plaintiffs for an accounting for the proceeds of the sale of the other eleven mines, defendant denies liability to account upon two grounds: first, because all dealings of trust and confidence between Costello and Cunningham were settled and compromised by Costello and Julia Cunningham, in her several capacities, and the settlement was approved and confirmed by the probate court; and, second, because Cunningham owned no estate, legal or equitable, in the other eleven mines.

The first ground cannot be sustained. The settlement as made had reference only to the proceeds of the sale of the Wagner group of six mines. The defendant alleges that Costello was bound to account for one-half of the net proceeds of the sale of that group, by an agreement with Cunningham. The property in Costello's hands was personal in its character, and its title was vested in the administratrix of Cunningham's estate. Such administratrix was charged by law with the duty to collect the personal property, and she was the only party who could enforce collection at that time. The collection was made by means of the settlement and compromise pleaded by defendant and admitted by plaintiffs. Such estate as Cunningham owned in the other eleven claims was in its character realty, an interest in mines, as contended by the complaint. If Cunningham owned the interest that plaintiffs allege he did, and he acquired that interest pursuant to the terms of the contract set forth in the complaint, then the title to his interest vested upon his death in his heirs at law subject to be divested through a sale by the administrator of his estate for the purpose of paying his debts and the expenses of the administration; there existing no or not sufficient personal property to pay such debts and expenses. It appears from the pleadings that ample personal property was in existence to pay such debts and expenses of the administration without a resort to the realty, no order of the probate court appearing for the sale of the mine or mines; therefore the administratrix of Cunningham's estate had no authority to dispose of the property, and any attempt to forfeit or waive the title of the other heirs at law to such equitable right in the mines would be unavailing. The deeds of release would not have the effect of divesting the title of the plaintiffs in the realty, even though the administratrix intended that such should be their effect in fact. The order of the probate court approving and confirming the settlement made by the administratrix would have been made without jurisdiction if it on its face purported to divest the title of the heirs at law to the realty, unless the facts appeared that such property was necessary to discharge the debts of the intestate or pay the expenses of the administration, or that it was being sold pursuant to a previous order of the probate court for purposes recognized by statute.

The second defense, viz.: the denial that Cunningham owned any estate in the other eleven mines, presents more difficulties. Defendant questions the right of the plaintiffs to maintain this action in the capacity in which they sue, and contends that the administrator of the estate of Patrick Cunningham, deceased, is the proper party to prosecute the cause of action asserted. Such contention cannot be maintained. The demand sought to be recovered is in equity an interest in realty, and the plaintiffs are suing as heirs at law of the alleged owner of such interest. The title to the estate claimed, if the claim is established, vested in the heirs at law of the decedent. They are the real parties in interest, and a recovery by them will fully protect the defendant in the event another action upon the same cause is commenced, and this is the only test as to the real party in interest with which a defendant is concerned. 30 Cyc. 84. From the facts appearing in the pleadings, the estate of Patrick Cunningham has no enforceable interest in the subject matter nor in the purpose of the suit, with the Wagner group of claims eliminated, and the rights of all parties beneficially interested in the remaining properties may be determined without the presence of said estate, and the defendant's rights be fully protected by a determination of the rights of the parties now before the court.

. Plaintiffs base their right to recover squarely upon the contract alleged to have been made by Costello and Cunningham during the year 1891. Such rights as they have arose from said agreement and the matters and things done by the parties pursuant to said agreement. The said agreement as pleaded by plaintiffs imposed upon the parties thereto mutual rights and duties, and created a relation of trustee and beneficiary, and also a relation of tenants in common of the property: *Anderson* v. *Snowden,* 44 Wash. 274, 87 Pac. 356; *Davis* v. *Givens,* 71 Mo. 94.

Upon this branch of the case the issue is clear-cut, viz.: Did Costello and Cunningham enter into a contract pursuant to the terms of which they acquired said eleven mines, and caused the record titles thereto to be conveyed to, and be held in the name of, Martin Costello, in trust for the use and benefit of said parties to said contract? The cause came on for trial, and the plaintiffs demanded a jury. The jury was duly im-

paneled, and the trial proceeded to the close of the evidence. A discussion arose as to the nature of the verdict to be returned by the jury, which resulted in an order being made to the following effect:

"It was thereupon stipulated in open court by counsel for the respective parties that, this being a suit in equity, the jury need not be required to return a general verdict herein."

Special interrogatories were proposed by the counsel of the respective parties, and special instructions were requested. After the argument by the respective counsel the court instructed the jury and propounded a number of special interrogatories framed by the court for answers by the jury as a special verdict. The jury returned answers to the interrogatories as a verdict. Whereupon the parties by their respective counsel stipulated in open court that the "special verdicts and findings might be taken and held to be the jury's verdict and recorded by the clerk." The defendant thereupon orally moved for judgment notwithstanding the verdict, and gave notice that at a later time defendant would submit her own findings. "Thereupon, upon stipulation by counsel in open court, it was ordered that plaintiffs should have until November 1, 1912, to file their opening brief and proposed findings, and that defendant should have until December 1, 1912, to file her reply brief and proposed findings, and that plaintiffs should have until January 1, 1913, to file their closing brief, and that the cause should stand submitted on the filing of plaintiffs' closing brief." The plaintiffs contend upon this appeal that the verdict of the jury is binding upon the parties and the court, and the defendant controverts this proposition. Ordinarily the contention of the plaintiffs would be sustained, but it appears, from the record that plaintiffs made no such contention in the lower court, but treated the special verdict then as advisory only, and voluntarily entered into a stipulation wholly inconsistent with such contention. To permit the question to be first raised upon appeal would deprive the lower court of an opportunity to correct any error committed in that respect, if error was in fact committed. On this appeal, under the circumstances disclosed by the record, the plaintiffs must be considered as having waived the benefits of a jury trial by acts incon-

XVI Ariz.—30

sistent therewith. The cause on this appeal will be considered as an appeal from a trial by the court without a jury. From the view we take of the evidence, the question becomes immaterial in the end; it only serves to eliminate from consideration the defendant's assignments of error relating to the jury, the verdict and the instructions given.

The defendant contends that the court committed reversible error in its findings of fact. A great number of grounds of alleged error are set forth in the assignments. Among the grounds alleged some have reference to the manner of stating conclusions of law and findings of fact, viz.: without stating them separately, by stating conclusions of law with the findings of fact. The defendant assigns as error the insufficiency of the evidence to support all the findings to the effect that Cunningham owned an interest in the Irish Mag group of mines and the Belflower and Smogler mines, and that Costello held the title thereto in trust for the use and benefit of himself and Cunningham. Every finding made by the court upon the main issue and bearing thereon is attacked by defendant upon said grounds of the insufficiency of the evidence to support such finding. The statute relating to the findings of fact by the court in force at the time of the trial was paragraph 1406, Civil Code of 1901, as amended by section 4, chapter 74, Laws of 1907. That statute is as follows:

"The trial court may make findings of fact in fact in any case tried to it without a jury and such findings shall become a part of the record of such case."

The parties having requested the findings by the court after the special verdict was returned, the trial must be regarded as a trial to the court, and the findings a part of the record of the case. We find no provision of the law in force at the time of the trial that required the judge of the trial court to render a decision in writing on the issues of fact, nor any requirement that the facts found and the conclusions of law shall be separately stated, and a judgment entered thereon accordingly, as existed before the 1907 amendment. Prior to such amendment paragraph 1406, Civil Code of 1901, required the decision of the court upon issues of fact tried by the court without a jury to be in writing, and filed with the clerk within 30 days after the trial. In giving the deci-

sion the facts found and the conclusions of law were required to be separately stated, and the judgment upon the decision was required to be entered accordingly. Such, in substance, are the usual requirements of the statutes of the Code states. The 1907 amendment, *supra*, clearly left the matter of stating the findings of fact wholly to the discretion of the trial court, and requires the court to state no separate decision thereon, nor is the court required to state the facts as found. If the court does in fact state its findings, such statement becomes a part of the record of the case, and becomes subject to attack by a motion for a new trial upon the general grounds that the evidence is insufficient to sustain any finding of fact material to the case. Paragraph 1476, Civ. Code 1901, as amended by sec. 8, c. 74, Laws 1907. By the provisions of the same amendment the trial court, upon the hearing of the motion for a new trial, was required to review the evidence as to such finding.

The order of the court overruling defendant's motion for a new trial is assigned as error, and the grounds alleged in the motion are separately assigned. These assignments attack the findings as they affect the ownership by Cunningham of any interest in the Irish Mag group and the Belflower and Smogler mines, and all facts found in support thereof, and they attack all findings that support the holding by Costello of the titles to said mines in trust for the use and benefit of himself and Cunningham, upon the grounds that all such findings are not sustained by the evidence. The motion for a new trial and the assignments of error attack all the findings of fact material to the case.

The burden was upon the plaintiffs to establish, by clear and convincing evidence, ownership of the said mines in Patrick Cunningham substantially as alleged in their complaint. They concede that the record title to the mines in question was held by Martin Costello. The presumption of law is indulged in such case that the holder of the record paper title is the owner of the whole estate, and unless such presumption is overcome by proof, it must prevail. Another rule may be referred to with profit, viz.: that the party asserting an equitable title to property must recover upon the strength of his own title, and not upon the weakness of the title of his adversary.

In support of the allegations of the plaintiff's claim of title
they offered the following circumstances in evidence: Witness Julia Cunningham testified that at the time witness and
Patrick Cunningham were married, Costello said to witness
that Cunningham was well off, worth $50,000. Witness inquired what he meant, and Costello said:

"We have a claim that the company has offered us $100,000
for. He owns half and I own half."

Costello called this claim the Irish Mag. On another occasion Costello said that Patrick Cunningham would have to
lay off, meaning stop working for the Copper Queen Company, and do assessment work. Costello said there were
eleven claims that he and Cunningham had, enumerating the
Wagner group and the Irish Mag, George Washington, the
Republican and Angel. The work was not necessary on the
Wagner group, for the reason they had patents for those
mines. They did not have the Belflower and Smogler then.
About that time Costello gave Cunningham $100. Cunningham went to Bisbee to do the assessment work. He then
lived in Tombstone. After that date parties began to work
on the Irish Mag, and witness wrote Costello that other parties had "jumped" the claim. In December, 1895, witness
wrote for Cunningham a letter to Costello, calling his attention to the fact that Peter Johnson wanted to sell two claims,
the Belflower and Smogler, for $1,200. Witness later had
a conversation with Costello concerning the purchase of said
two claims. Costello talked about the claims in 1896. Cunningham thought they had best get the claims. In 1896 or
1897 Costello and Cunningham bought the two claims from
Pete Johnson, called the Belflower and Smogler and in
1898 Cunningham did the assessment work on all of them,
including the Irish Mag group. He did all of the assessment
work on all these claims in 1899. A group of claims, including the Belflower and Smogler, was surveyed, at an expense
of $200, and Cunningham paid $100 and Costello paid $100.
Costello gave Cunningham $100 in 1895. If Costello paid
Cunningham any other sum for assessment work other than
above witness did not know. In Bisbee witness had a conversation with Costello about the purchase of the Belflower
and Smogler from Pete Johnson. Costello was in Bisbee.
Cunningham wanted to buy the claims. Costello was not

very eager to buy. He had not answered a letter written about it. Finally he said: "He will take $1,000 for the claims. If I offer him $1,000 he will take it all right." And Cunningham said, "You try it." He said, "I will try it." Costello said, "Have you got any money?" and Cunningham asked witness, "How much [money] have you got?" Witness said, "I have $370." Witness got the $370 and gave it to Cunningham, and Cunningham gave it to Costello, and Cunningham said, "I will borrow a hundred and thirty from Mrs. Letson" and they went down town. Afterward witness paid Mrs. Letson $130. About Christmas, 1896, they had not bought the claims, but were talking about buying them. They spoke about the Irish Mag. Cunningham said to Costello, "Why don't you open up the Irish Mag?" Costello said, "That will take a great deal of money. It might take $10,000 and we might not find anything." Cunningham said, "Oh, yes; if you put in that much money, I think you will find something." And witness said, "I have a ranch in California worth $5,000 anyhow, and I will give it to you for half of the ten thousand." Costello said: "I ain't buying any California real estate just now. Well, all right, I'll open her up. When I go over home, I will send Tom Lowry over and let him take charge." Cunningham jumped to his feet and said: "No, by G——; she is mine, and nobody shall open her up but me." Costello said nothing more. Witness gave Cunningham $300 to use in doing assessment work for 1896. In May, 1899, Cunningham wanted to sell the Irish Mag. Witness forwarded to Costello a letter from one Graham in which Graham had offered to buy the Irish Mag group and Wagner claims, amounting to 11 in number, for $200,000. Witness added to the letter, "Martin, will we take this?" Cunningham died July 1, 1899. Costello was at the funeral. After the funeral Costello was at witness' house. Witness said to him: "Costello, I sent for you for a purpose. Paddy always said that he owned a half interest with you in all the claims he had here in Bisbee." Costello replied: "Yes; he owns half and I own half." Witness named every claim mentioned. Costello said: "Yes, if Paddy said he had half of them I will never say he didn't." Witness said, "How do I stand?" Costello said, "I will treat you just as I would Paddy." Witness next saw Costello

in Tombstone, and made an appointment to meet him at Reilly's law office. Reilly gave witness an instrument, signed and acknowledged by Costello, acknowledging an equitable interest in the Wagner group as belonging to the heirs of Patrick Cunningham. Witness refused to accept it as a final statement of their rights. Reilly said, "That is all you own." Witness said, "No; there are 17; there are 11 more." Costello said, "Well, the patents are only out on these now." On the six. They were all the patents were out on. Costello called witness outside and asked witness to trust him, and "when I sell the rest I will give you your half of everything."

Witness Joseph McNelis testified that Martin Costello, in a conversation with witness in 1899, before the death of Cunningham, said, in substance, that Cunningham was worth all kinds of money, and witness asked, "What does it amount to?" Costello answered, "Mining claims; him and I is partners in the Bisbee district." Witness asked Costello about the property Cunningham owned there, and Costello answered, "Him and I is the owners in all the claims we own in Bisbee." At a subsequent time when he was present and Cunningham and Costello were talking about work for witness, Costello asked Cunningham, "Why don't you take him [meaning witness] out on them claims of ours where you have been doing some work out there?" Cunningham said, "I tried that, but could not make it stick." Costello said, "Why?" Cunningham said: "Well, when I paid for hauling the ore down to the smelter, and when the smelter expenses was taken out, I hardly got an existence. I can work and get better wages and work less when working for the company." Witness asked "him," "Where was the mine?" and what mine he was talking about, and he said, "The Irish Mag." On the 2d of July Martin Costello came to Cunningham's funeral. At Mrs. Cunningham's house Costello asked witness out in the yard, and he said, "This shock will kill his mother." Witness said, "I guess she will have to stand it." He said, "It will be hard on Mrs. Cunningham and the family, but she is pretty well fixed." Witness said, "How well is she fixed?" He said, "Paddy and I owns a half interest in all those claims over on the hill." After the funeral, witness, Mrs. Cunningham, Costello, and T. R. Grady

were present at the Cunningham home. Mrs. Cunningham had sent for Costello. After considerable talk Costello started to go, when Mrs. Cunningham said she had sent for him for a purpose. She said, "I want to know how I am fixed." He said, "What do you mean?" She said, "I want to know how those mining claims are situated, as my husband told me he always owned a half interest in them." He said, "If your husband told you that, he was right; certainly he owns half interest in all those claims; I will never say he don't." Costello mentioned a lot of claims. The Irish Mag group and the Belflower and Smogler, among others. At a later time witness had a conversation with Costello, when Costello said to witness that he had recently seen Mrs. Cunningham and family in Los Angeles, and said, "They have got lots of money; they will get along fine." Witness said to him, "You didn't give them what you promised." "Oh," he said, "they have got lots." Witness said, "You had better come through with the promise you made, or you will be sorry for it." This was the last conversation witness testifies to having with Costello about the matter.

Witness T. R. Grady was at the funeral of Patrick Cunningham. He is a brother to Mrs. Cunningham. After the funeral witness, Mrs. Cunningham, Joe McNelis, Martin Costello, and perhaps others, were present, when Mrs. Cunningham and Costello had a conversation about the mines. Mrs. Cunningham said: "Say, now, Costello, Paddy always told me that he owned a half interest in the claims with you." She mentioned some of the mines by name, among them the Irish Mag. He said, "Why, Mrs. Cunningham, I will treat you the same as I would treat Paddy. If Paddy says that he owned all the claims," or "a half interest in all those claims, I won't say that he didn't."

Witness James Letson in 1892 went with Costello on the Irish Mag claim. Cunningham was doing the assessment work on the claim at the time. On the way back to Bisbee from the claim, Costello said to witness that some day Paddy Cunningham would get quite a lot of money out of that claim, the Irish Mag claim. Later on witness had another conversation with Costello in regard to those claims. That was after the Irish Mag group was sold. In the year 1902 or 1903. It was after the sale and after they had struck

ore in the Irish Mag. Costello and witness were talking about the Irish Mag, and witness said, "Martin, it is a wonder that you didn't sink that shaft yourself, as you have plenty of money?" Costello told witness that he would have sunk it himself if Paddy Cunningham had lived. Witness then asked, "Mrs. Cunningham will get quite a lot of money out of this when it is all settled?" and he said she would; she would get more money when the other six claims were sold; that Paddy had a half interest in those other six claims. The other six claims he mentioned were the Hattie Manchester, Supplement, Leo, Roy, Belflower, and Smogler. Costello told witness the reason those six claims were in his name was that Cunningham was not a citizen, and could not get a patent.

Witness Jno. S. Williams testified that he had a conversation with Costello concerning the mines some time in the spring of 1892. Costello asked witness if he knew where the Irish Mag ground was, and witness did not know. Costello told witness that Paddy Cunningham was doing some work and said:

"Well, if Pat is willing to put up his time, I ought to be able to put up a little money to keep him going. Some time we will make a little money out of it."

At different times witness carried packages, such as fuse, powder, caps, from Costello and Costello always told witness to take them over to "Paddy," his partner.

Witness Jos. Chisholm wrote a newspaper article on the Irish Mag and Wagner groups for publication in a Prescott paper, at the employment of Patrick Cunningham. The agreed price for the service was $10. Cunningham told witness that Costello would pay him. Witness asked Costello for the money, and told Costello that Cunningham had said that Costello would pay the money. Costello said that he would pay half only, and that Cunningham would own half the claim, and witness must get the other half from him, and offered witness $5. Witness would not take it because witness told Costello that Cunningham had said that he was doing the work, that was the arrangement, and Costello was putting up the money. It was on that basis that witness and Cunningham made the agreement that witness wrote the article. Costello said he would pay the money on the claims

for the contract work alone, but not for any newspaper articles, and Cunningham would have to pay half.

Witness Peter Johnson testified that he located the Belflower and Smogler's claims, and sold them to Paddy Cunningham. Witness negotiated the sale with Cunningham. Witness received $1,000 by a check or two checks signed by Martin Costello, and made the deed to Costello.

Witness T. C. Wright testified that in the spring of 1892 Paddy Cunningham was doing the assessment work on the Wagner and Irish Mag groups. Costello came to where witness was sharpening tools, near or on the property, and Cunningham came over. Witness advised that Cunningham sell the claims. Cunningham said if he sold he would have money; that he would get half of the money, and asked Costello if he would get half of it. Costello said: "Yes; you would get half of it. You are my partner; you own a half interest."

Witness Peter C. Hansen testified that his wife sold Martin Costello her interest in the Irish Mag group for $3,000. Two thousand dollars was paid as a final payment, and Reilly got $200, and Robinson got $100, and Costello paid $1,700 to witness' wife. This was in 1892. The agreement was made September 16, 1892, and recorded.

Witness John Graham testified that witness went over the Irish Mag group with Cunningham, and went to see Costello about closing the purchase of these mines with the Wagner group. Costello stated that the mines were in litigation, there was a suit pending, and, furthermore, that Paddy Cunningham was his partner and owned a half interest in those claims, and he could not do any business without the consent of Paddy Cunningham. Later Captain Hoatson came to Bisbee, and witness showed him eleven claims, including the Irish Mag group. Then witness and Captain Hoatson went to Tombstone to see Martin Costello, and had a conversation with him in the presence of Allen R. English in regard to the purchase of the mines. Again Costello said he would see Paddy Cunningham, or have Reilly see him, and make some arrangement whereby they could set a price. Later in the day a further conversation was had, and Captain Hoatson made this proposition:

"Martin, we will give you $250,000 for that Mag group of mines in Bisbee, in the Warren mining district."

Costello said he was not in any hurry about selling. He went on and told about a suit pending in regard to the titles, and that he hadn't got possession yet, and he didn't know when he would get it. He said, further, that Paddy Cunningham of Bisbee was a half owner in those claims, and he could not do any business without the consent of Paddy Cunningham. "We were then trying to buy 11 claims." In a conversation had with Costello on May 28, 1899, he stated to Captain Hoatson that he was not ready to sell those claims. He said he had not been able to see Paddy, Cunningham, but that he would have Reilly see him and make some arrangements. Hoatson wanted to know why he could not in some way tie up those claims, get an option on them, or buy them outright, and Costello said that Paddy Cunningham was his partner in those claims, and he could do no business without the consent of Paddy Cunningham. Gordon R. Campbell was present and said:

"That is funny. You have those titles in your name, the legal titles, and at the same time we have to go over to Bisbee to consult Paddy Cunningham. How is it?"

Then Costello stated that he had the legal titles to that property, but that Paddy Cunningham was his partner, owned a half interest in those claims, and he would not do any business without the consent of Paddy Cunningham. He refused to consider an offer for the claims. In June, 1899, witness for the first time got Costello and Cunningham together. After some talk, Cunningham said, "Martin, what do you think about selling these claims to Jack [speaking of witness]?" Martin Costello said, "Paddy, we have a big mine in the Irish Mag. The Copper Queen people have offered us $200,000 for the Irish Mag." Witness said, "Well, Martin, what Captain Hoatson told you, do you think any more of the Copper Queen people than you do Captain Hoatson?" Costello said: "Captain Hoatson offered us $250,-000 for the claims. I don't think it is enough." Later, when witness was again trying to close the deal after a decision of the lawsuit on the Irish Mag claims, Costello said: "I have often thought, and do yet, and some time I will move to Bisbee, and Paddy and me will work them mines myself; we-

ain't in any hurry to sell them." On July 23, 1899, after the death of Cunningham, witness asked Costello what he was going to do with regards to selling the mines. He stated he didn't know how Cunningham's estate would be settled up, and he didn't know. In August following, when approached by witness, Costello stated that he had made a proposition that he would sell the property for $500,000. The sale was thereafter closed through Graham, Hoatson and Campbell, to the Lake Superior & Western Development Company.

On May 15, 1899, Costello wrote to Cunningham:

"The Daly Cohn case was decided by the supreme court of the United States to-day in our favor, after nine years courting we won at last."

This had reference to the Irish Mag group. Upon cross-examination a letter signed by Pat Cunningham and addressed to Martin Costello, dated June 3, 1899, was received in evidence. It states:

"I received your letter some time ago and I was glad to hear that you had won the case, and I hope we will make a success of them now either one way or another. I understand from lots here that you are going to sink a big shaft. You must remember before you start in what you have to contend with, nine miners, three men on a shift, two engineers and two other men. So that will be an awful drag on one man's sack. My advice would be to let go. Place the price at half a million, one hundred thousand down, for I know we can get a quarter of a million, but suit yourself, whether you work them or put on your price. There is no doubt in the world but if you work them you could make a big success, but it takes money to do it. . . . You could take more ore out in an hour in either the Irish Mag or Giberalta than either of them has got yet. . . . "

This evidence, taken as a whole, fairly tends to establish that Martin Costello paid the purchase price of the Irish Mag group; that his checks paid the purchase price of the Belflower and Smogler mines, and that Patrick Cunningham contributed one-half of the purchase price of the Belflower and Smogler; that Cunningham performed the necessary assessment work upon all the unpatented claims standing in Costello's name from the time Costello acquired the record titles up to the time patents were acquired, or until Cun-

ningham died; that Cunningham claimed a half interest in all the 17 mines up to the time of his death. It is fairly to be inferred from this testimony that Costello permitted Cunningham, without objection, to perform the assessment work on the claims standing in Costello's name when such work was necessary; that Costello looked to Cunningham to keep watch over the claims and protect them from trespasses of others; that Costello stated many times that Cunningham was his partner, and that Cunningham owned a half interest with him in the mines standing in his (Costello's) name; that Costello stated in the presence of Cunningham that Cunningham would get money out of the sale of those mines because Cunningham was a partner with Costello, or that Cunningham owned a half interest with Costello in the mines at Bisbee; and that Costello stated to Graham, Captain Hoatson, James Briggs and Gordon R. Campbell repeatedly that Cunningham owned an equitable half interest in the Wagner and Irish Mag groups of mines with Costello, before Cunningham's death and before these groups were sold to the Lake Superior and Western Development Company, which sale was brought about by Graham, Hoatson, Briggs and Campbell. The evidence fairly establishes that after the death of Cunningham, Costello stated to Mrs. Julia Cunningham that Patrick Cunningham owned a half interest in the 17 claims with himself; and that he (Costello) would see that she and the children of Patrick Cunningham would get their share of the sales, and that he (Costello) would never deny their claim. There is no evidence tending to prove that Cunningham performed or paid for any of the patent work on the claims in question.

From the facts that Cunningham paid one-half of the purchase price of the Belflower and Smogler claims, and performed the assessment work thereon, and paid for having them surveyed with other mines, and claimed an interest in them, and that Costello did not deny the claim when made to him or in his presence, the inference can fairly be drawn therefrom that Cunningham and Costello acquired the title to these mines pursuant to a previous understanding between them. These facts substantially support the allegations of the complaint, setting up the contract, and they fairly support the findings to the effect that Costello and Cunningham were co-owners of the Belflower and Smogler mines, and

that Costello held the titles thereto in his name in trust for the use and benefit of himself and Cunningham. So considered, this evidence overcomes the legal presumption arising from the conveyance to Costello to the effect that through the conveyance he acquired the whole estate in these claims.

The statements made by Costello to the effect that Cunningham was his partner in the mines, and that Cunningham owned a half interest with him in the mines, may or they may not, be circumstances tending to prove ownership in Cunningham. In reference to the Belflower and Smogler, the evidence fairly establishes that Cunningham paid half of the purchase price and performed the assessment work necessary to maintain the title thereto. These statements by Costello became admissible as evidence only because they are made by him against his interest. Clearly such statements, when given the most favorable effect to the plaintiffs, are simply statements to the effect that Cunningham owned a half interest with Costello in mines in the Warren mining district, and that Cunningham was a partner with Costello in mines situate in that mining district. Such statements and declarations, standing alone, are not sufficient evidence to determine, or sufficient evidence of its nature to warrant the court in finding that Costello and Cunningham acquired mines by each paying an equal share of the expenditures laid out in their acquisition, and that Costello took the record title thereto to hold in his name in trust for the use and benefit of himself and his co-owner, Patrick Cunningham. Such statements and declarations made by Costello are insufficient, standing alone, to establish the trust contended for. *Leatherwood* v. *Richardson*, 11 Ariz. 278, 94 Pac. 1110.

A common requirement is that the evidence be clear, explicit and convincing, not only as to the existence of the trust, but as to its terms and conditions. 39 Cyc. 84.

The rule requiring the evidence to be clear and satisfactory is especially applicable where the trust is attempted to be proved by parol evidence, as well as when it is sought to convert into a trustee a person holding the title to property ostensibly as absolute owner. 39 Cyc. 84, 85.

The statements and declarations of a holder of the record title of mines, made against such title, can affect the holder's title only by way of working an estoppel. Oral state-

ments or silence could never have the effect to pass title which the statute expressly declares shall be transferred by deed only. *Hayes* v. *Livingston,* 34 Mich. 384, 22 Am. Rep. 533; *Nims* v. *Sherman,* 43 Mich. 45, 4 N. W. 434.

Paragraph 721, Civil Code of 1901, provided that:

"No estate of inheritance or freehold or for a term of more than one year, in lands and tenements, shall be conveyed from one to another unless the conveyance be declared by an instrument in writing, subscribed and delivered by the party disposing of the same, or by his agent thereunto authorized by writing."

To justify a recovery the plaintiffs must prove their interest to have been in existence from the acquisition of the title by Costello. His subsequent oral statements and declarations could not have the effect to transfer any rights to plaintiffs nor to their intestate.

As regards the title of Cunningham in the Irish Mag group of mines, the only evidence produced by the plaintiffs is the oral statements and declarations made by Costello and evidence that Cunningham performed the necessary assessment work thereon. Such evidence is insufficient to sustain the findings to the effect that Cunningham was a co-owner with Costello in said mines, or that Costello held title thereto in trust for the use and benefit of himself and Cunningham.

As regards the Belflower and Smogler mines, the plaintiffs' evidence is to the further effect that Cunningham paid one-half the price paid therefor at the time of their purchase. The inference may be fairly drawn therefrom, and from the oral statements and declarations made by Costello, that Cunningham contributed half of the purchase price pursuant to some understanding with Costello that he (Cunningham) should acquire an interest in the property in proportion to the payment made by him in the purchase of the property. So considered, the evidence is sufficient to sustain the findings that Cunningham was a co-owner with Costello of the Belflower and Smogler mines, and that Costello held the title thereto in trust as found. The court erred in refusing a new trial.

The defendant assigns as error the order of the court refusing to reopen the trial of the cause for the purpose of hearing additional testimony. The motion was made at a

time subsequent to the close of the evidence, and after the cause had been submitted for decision.  The motion was addressed to the sound legal discretion of the trial court, and the exercise of such discretion is not reversible except upon a clear showing of abuse.

Other grounds for reversal are assigned by defendant, which we will not discuss, for the reason their discussion would unduly extend this already long opinion, and for the further reason we deem justice requires a new trial of this cause, and if errors occurred in the former trial, they will not again occur upon a new trial.

Because the evidence is insufficient to sustain findings of fact material to the case made by the court, the judgment is vacated and the cause remanded, with instructions to grant a new trial.

Reversed and remanded.

ROSS, C. J., and FRANKLIN, J., concur.