[Civil No. 1892.  Filed February 2, 1922.]

[203 Pac. 1085.]

R. L. HENDERSON, Administrator of the Estate of WILLIAM HENDERSON, Deceased, Appellant, v. F. F. TOWLE, P. P. GREER, J. N. ROBINSON, and THE FIRST NATIONAL BANK OF GLOBE, a Corporation, Appellees.

1. JUDGMENT — EFFECT OF COMPROMISE OF PENDING SUIT HELD TO MERGE ACTION IN JUDGMENT.—The effect of the compromise of an action to recover certain shares of stock, under which plaintiff for a consideration relinquished all claim to the stock and suffered judgment of dismissal, was to debar plaintiff of any further claim to the stock inconsistent with the terms of the agreement and merged the cause of action in the judgment.

2. JUDGMENT—ACTION FOR RELIEF FROM JUDGMENT COMPROMISE HELD COLLATERAL ATTACK ON JUDGMENT.—Where judgment in an action to recover certain stocks had been entered by stipulation and agreement, an action not brought for the sole purpose of impeaching the former judgment, but for independent relief from the compromise, was a collateral attack on the judgment.

3. JUDGMENT — PARTY CANNOT ATTACK JUDGMENT COLLATERALLY FOR FRAUD.—It is not permissible for a party or privy to attack a judgment in a collateral proceeding on account of fraud.

4. JUDGMENT—NO DISTINCTION BETWEEN STIPULATION AND TRIAL JUDGMENTS WHEN COLLATERALLY ATTACKED.—As there is no distinction between the effect of a judgment entered upon agreement in its

---

3. On the question of character and kinds of judgments and orders within the rule that judgments and orders cannot be collaterally attacked for fraud not affecting the jurisdiction, see comprehensive note in 36 L. R. A. (N. S.) 980.

effect as a bar or estoppel and one rendered upon trial, there is no distinction between such when attempt is made to impeach them collaterally.

APPEAL from a judgment of the Superior Court of the County of Gila. G. W. Shute, Judge. Affirmed.

### STATEMENT OF FACTS.

The appellant (hereinafter referred to as plaintiff) on February 6, 1919, commenced an action against the appellees (hereinafter referred to as the defendants) and in his third amended complaint alleged as follows: Plaintiff is the administrator of William Henderson, who died in December, 1915. Henderson being indebted to the defendant, the First National Bank of Globe, in the sum of about $17,800, transferred to it as security certain properties including 35,327 shares of the capital stock of Gibson Copper Company. After plaintiff's appointment as administrator, he applied to defendant Greer, president of the bank, for the property and effects of his intestate that might have been left over after paying the obligation due the bank, and was informed by Greer that said properties had been exhausted to pay Henderson's obligation and that therefore the bank had none of said assets. Thereafter, and on April 4, 1917, plaintiff caused the defendants, Greer and Towle, to be cited to appear and testify in accordance with the provisions of paragraphs 861 to 864, Civil Code, in the probate proceedings, and upon such appearances these witnesses deposed as follows: Greer, that he had been president of the bank since 1912; that after the bank had applied all the securities, with the exception of the stock of the Gibson Copper Company, to pay Henderson's obligations, there remained a balance due the bank of about $1,500; that he and the defendant Robinson (the latter being also an officer of the bank)

paid the bank the balance due and had the stock transferred to their own names, and, as the complaint alleges, ''appropriated the same to their own use and benefit.'' Towle's testimony was to the effect that he had been secretary of the Gibson Copper Company for about eleven years; that the records of that company showed that Henderson owned 35,327 shares of the company's stock which, on December 20, 1913, was transferred to the bank; that the Gibson Copper Company sold its holdings for $250,000 to the Gibson Consolidated Copper Company, the former company receiving of the purchase price $143,000 in cash and the balance in stock of the new company.

Plaintiff then brought suit against the bank, Gibson Copper Company, and the defendants Greer and Towle and Robinson ''to recover the aforesaid 35,327 shares of the stock of the Gibson Copper Company, a corporation, and, upon the establishment of said claim, for an accounting to him as such stockholder by the Gibson Copper Company and F. F. Towle of the management of the affairs of the Gibson Copper Company.'' In that suit the defendants proposed to plaintiff to enter into a stipulation whereby the action was to be dismissed as against the defendants the First National Bank of Globe, Greer, and Robinson, and the alleged claim of plaintiff to said stock relinquished as against all the defendants, in consideration of $44,157 to be paid to plaintiff, with the right reserved, however, to plaintiff to commence an examination of the books and accounts of the Gibson Copper Company on or before January 1, 1918, and to proceed with the same in a diligent manner to ascertain whether one-half of said stock was entitled to a liquidation value of more than $2.50 per share, being the amount paid to plaintiff as the consideration for his claim to all the stock, the suit to recover the stock to be dismissed by order of the court, upon motion of the

parties to the stipulation. This stipulation was made November 27, 1917, and filed in the court, the money paid to plaintiff, and the cause dismissed as against the bank, Greer, and Robinson, the accounting being the sole issue left to be thereafter determined. It is then alleged that upon plaintiff's examination of the records of the Gibson Copper Company he found such statements to be false, in this, that at the time defendants Greer and Robinson appropriated the stock, Henderson's indebtedness to the bank had been more than paid off and satisfied, and that the representation that Gibson Copper Company received only the sum of $250,000 in cash and stock was untrue, in that it had received $250,000 in cash and 250,000 shares of the capital stock of the Gibson Consolidated Copper Company. It is further alleged that the representations made by Greer and Towle deceived and misled plaintiff and that he would not have made the agreement of compromise but for his reliance on such statements. Judgment for damages is prayed for the difference between the amount received by plaintiff in the compromise settlement and the actual value of the stock at the time of the compromise.

To this complaint the defendants (with other pleas) demurred, generally and specially, which demurrers were by the court sustained, and the plaintiff declining to amend, final judgment was rendered in behalf of the defendants, and the cause is here on appeal by plaintiff from such judgment.

Mr. Jay Good, for Appellant.

Messrs. Morris & Malott, for Appellees.

FLANIGAN, J. (After Stating the Facts as Above.)—The former action, brought by plaintiff to recover the 35,327 shares of the Gibson Copper Com-

pany's stock from defendants, was compromised by the stipulation and agreement of the parties under which plaintiff relinquished to the defendants all claim to the stock, suffered judgment of dismissal, and received from defendants the sum of $44,157. The present action is brought to recover an additional sum in money to compensate plaintiff for the damages he alleges he sustained in parting with the stock at an inadequate price, under the agreement as executed, all of which he was induced to do by the fraudulent misrepresentations of the defendants of certain facts concerning the value of the stock.

Stated as strongly as the case allows, plaintiff's contentions are, substantially, that "as one injured by a fraudulent compromise may, instead of restoring the benefit received and suing at law or in equity to rescind and for equitable relief, retain what he has received and sue whoever may be liable for the consequences of the deceit, by which the compromise was obtained, and recover whatever damages resulted therefrom" (12 C. J. 357, and cases cited), that he may recover herein by treating the former proceedings as void so far as they execute the fraudulent scheme, and that this action is a permissible attack in law upon the entire and executed transaction, including the judgment, without restoration of benefits received, or offer to restore such benefits.

If we were dealing with an agreement of compromise and settlement *inter partes,* of which a judgment of dismissal on the merits were not a component part, it may be that it would now be open to plaintiff in an action for the deceit to recover the amount of money which would, in the language of the court in *Gould v. Cayuga County Bank,* 99 N. Y. 333, 2 N. E. 16, make the compromise stand as "an honest compromise" by recovery of the excess value of the stock, being that portion of plaintiff's loss put upon him

by the fraud of the defendants, and due solely to such fraud. But the case here is different. The plaintiff does not undertake to have set aside or impeached the judgment of dismissal as such; in fact, its force and effect, as precluding him of any further right to the recovery of the stock sued for in that case, is fully recognized.

We think that the effect of the transaction, including the judgment, is to debar the plaintiff of any further claim or right to the stock, or its value, inconsistent with the terms of the compromise agreement, and the cause of action, if any theretofore existed, is merged in the agreement and judgment. The compromise agreement upon which the judgment was rendered fixed the value of the surrendered claim to the stock at the sum of $44,157, and it was executed accordingly by payment of that value to plaintiff and the rendition of judgment. Plaintiff had his opportunity to contest all issues tendered by his complaint in the action brought to recover the stock, for a part of the value of which he now sues, and having thus consented to this determination of the value of his claim, is barred and estopped from asserting the contrary, in any collateral proceeding.

As the action is not brought for the sole purpose of impeaching or overturning the former judgment, but has also for its object an independent relief or result, the attack made herein upon the former judgment is a collateral one. *Tube City Mining etc. Co.* v. *Otterson*, 16 Ariz. 305, L. R. A. 1916E, 303, 146 Pac. 203; 23 Cyc. 1062.

It is the general rule that it is not permissible for a party or privy to attack a judgment in a collateral proceeding on account of fraud. Black on Judgments, § 290. This rule is but a particular application of the more comprehensive one that—

"A judgment rendered by a court having jurisdiction of the parties and the subject matter, unless reversed or annulled in some proper proceeding, is not open to contradiction or impeachment in respect to its validity, verity, or binding effect by parties or privies in any collateral action or proceeding." 23 Cyc. 1055.

As the law recognizes no distinction between the effect of a judgment entered upon the agreement, consent, or compromise of the parties in its effect as a bar or estoppel, and the effect of one rendered upon contest and trial (23 Cyc. 1134, 728, 729; Black on Judgments, § 706; *Crossman* v. *Davis,* 79 Cal. 603, 21 Pac. 963; *Merritt* v. *Campbell,* 47 Cal. 542), so likewise it recognizes no distinction between such judgments when the attempt is made to impeach or contradict them on collateral attack.

"The rule against collateral impeachment applies to every judgment, order, decree or judicial proceeding, of whatever species, that is not absolutely void." Black on Judgments, § 246.

And it is established by the weight of authority that judgments, such as the one here in question, are not subject to collateral attack for fraud (*Clark* v. *Southern Can Co.,* 116 Md. 85, 36 L. R. A. (N. S.) 980, 81 Atl. 271; *Morris* v. *Travelers' Ins. Co.* (C. C.), 189 Fed. 211; *Costello* v. *Cunningham,* 16 Ariz. 447, 147 Pac. 701; Black on Judgments, § 290 et seq. [and cases cited]), or for any other reason than a lack of jurisdiction over the person or subject matter which is apparent on an inspection of the record itself. *Tube City Mining etc. Co.* v. *Otterson, supra.*

The facts apparent in this case, and such as may well be the facts entirely consistent with the case pleaded, go far to illustrate the wisdom of the rules just enunciated. If the former judgment may be the subject of the attack attempted in this proceeding, then it follows that it would be proper to grant the

relief prayed for, not only when it appears that the benefits received under the compromise agreement were neither restored, nor offered to be restored, but that such relief would be proper were the actual fact to be that the plaintiff, very shortly after making such agreement, obtained full knowledge of the falsity of the representations made to him and thereafter took no steps in any direct proceeding to vacate or annul the judgment. It also follows that the plaintiff, without resorting to any proceeding to vacate said judgment or to restore the *status quo*, or to submit himself or the cause to the court to fulfill the legal or equitable obligations or conditions which might rest or be properly imposed upon him on the annulment or vacation of the judgment, might nevertheless, regardless of all other legal or equitable considerations and the defenses which might have been interposed to the first action, retain the money paid him, approving the agreement so far as it was favorable to him and rejecting and repudiating it so far as it was unfavorable to him. While it is true that fraud vitiates all transactions, we think that it was unquestionably necessary for plaintiff to have submitted his plaint, alleging the fraud, to the proper court, in some proceeding wherein the compromise settlement and judgment could be revised, or vacated, in its entirety, and the equitable and legal rights of the parties examined into, established, and conserved by the appropriate orders and judgment of the court under all the facts.

"That fraud vitiates everything tainted by it, even the most solemn determinations of the courts of justice, is an axiom of universal application, but, like every other subject of judicial inquiry, fraud must be investigated in the proper forum and by appropriate methods of procedure." *Clark* v. *Southern Can Co.,* *supra.*

For these reasons it is manifest to us that the court below committed no error in sustaining the demurrer to the complaint, and the judgment must be affirmed.

ROSS, C. J., and McALISTER, J., concur.