[Civil No. 2217.   Filed May 22, 1925.]

[236 Pac. 464.]

# TUCSON GAS, ELECTRIC LIGHT AND POWER COMPANY, Appellant, v. HENRY G. DOE, Sr., as Personal Representative of HENRY G. DOE, Jr., a Minor Child, Appellee.

1. DEATH—FATHER MAY MAINTAIN ACTION FOR DEATH OF CHILD WITH-OUT ALLEGING HE WAS PERSONAL REPRESENTATIVE.—Under Civ. Code of 1913, paragraph 3373, father *held* entitled to maintain action for death of minor child, though he did not allege that he was personal representative of deceased; such allegation being treated as surplusage.

2. ELECTRICITY—RES IPSA LOQUITUR DOCTRINE APPLICABLE.—In action against electric company for death of child caused by high-tension electric current escaping from primary circuit and entering low-tension circuit of customer, doctrine of *res ipsa loquitur* applies to raise presumption of company's negligence.

3. ELECTRICITY — FINDING ESCAPE OF CURRENT WAS DUE TO NEGLI-GENCE SUSTAINED.—In action against electric company for death of child from electric shock, finding that high-tension current was permitted to escape from defendant's primary wire, and that such current was cause of death, *held* sustained by evidence.

4. NEGLIGENCE — DEFENDANT LIABLE, IF NEGLIGENCE IS CONCURRENT CAUSE OF ACCIDENT. — If defendant's negligence was concurrent cause of wrongful death, it is immaterial whether negligence of other codefendant was pleaded or proved.

5. EVIDENCE—BROKEN LAMP GLOBES ADMISSIBLE TO SHOW EXCESSIVE ELECTRIC CURRENT. — In action for death from electric shock, broken glasses and lamp globes *held* admissible to show excessive current.

6. TRIAL — REFUSAL OF REQUESTED INSTRUCTION NOT ERROR, WHERE FULLY COVERED BY THOSE GIVEN.—In action for death from exces-sive electric current, requested instruction that company would not

1. Statutory right of parent for death of child, see note in L. R. A. 1916E, 120. See, also, 8 R. C. L. 756.

2. Application of *res ipsa loquitur* doctrine to accidents on pri-vate property due to escape of electricity, see notes in 22 L. R. A. (N. S.) 1183; 32 L. R. A. (N. S.) 848. See, also, 9 R. C. L. 1221.

4. See 9 R. C. L. 1225.

5. See 14 R. C. L. 751.

be liable, if equipment of its customer, with which deceased came in contact, was defective, *held* fully covered by instruction given that defendant would not be liable if the injury would not have occurred except for defects in customer's appliances, no matter how excessive voltage might be.

See (1) 17 **C. J.**, p. 1289.    (2) 20 **C. J.**, p. 381.    (3) 20 **C. J.**, p. 388.    (4) 29 **Cyc.**, p. 497.    (5) 22 **C. J.**, p. 767.    (6) 38 **Cyc.**, p. 1717.

APPEAL from a judgment of the Superior Court of the County of Pima.    George R. Darnell, Judge. Affirmed.

Messrs. Kingan, Campbell & Conner, for Appellant.

Messrs. Richey & Richey, Mr. Kirke T. Moore and Mr. E. B. Frawley, for Appellee.

LOCKWOOD, J.—Henry G. Doe, Sr., hereinafter called plaintiff, brought suit against the Tucson Gas, Electric Light & Power Company, hereinafter called the company, and one A. R. Buehman for damages for the death of his minor son, Henry G. Doe, Jr., hereinafter called decedent, which he claimed was caused by the concurrent negligence of the company and Buehman.

He alleged in his complaint "that plaintiff is a resident of the county of Pima, state of Arizona, and the father of Henry G. Doe, Jr., a minor child, deceased, and that he makes this complaint as the personal representative of said decedent." He then sets up his claim of negligence, which was predicated on the allegation that the company was engaged in the manufacturing and distribution of electricity in Tucson; that in pursuance thereof it maintained a high-tension circuit, commonly called a primary circuit, carrying a current of electricity of a strength dangerous to human life, and a low-tension circuit, commonly called a secondary circuit, for distribution to various customers of a current which was not dangerous to

human life; that at the time set forth in the complaint Buehman was running a photograph gallery, wherein he used certain mechanical appliances driven by an electric motor supplied with current from the secondary circuit of the company; that decedent was a minor child working for Buehman in and about his gallery; that on the twelfth day of August the company carelessly and negligently operated its high-tension circuit so that a current dangerous to human life escaped therefrom and entered the secondary circuit which supplied the Buehman apparatus; that the Buehman apparatus was defective in construction, and, when the decedent, Doe, came in contact therewith, the current which had escaped from the primary circuit of the company came in contact with his body, and that as a result thereof he died. Each defendant answered separately with a general demurrer and a denial, and also with a special answer that the death of decedent was caused by the negligence of the other defendant.

The case was tried to a jury, which returned a verdict of $8,250 against the company; plaintiff having dismissed during trial as to Buehman, upon which verdict judgment was duly rendered. After the usual motion for new trial was made and denied, the company appealed.

The first point which we will consider is the claim that plaintiff did not allege or prove he had brought his suit in the proper capacity. This action is brought under title 23, R. S. A. 1913. Paragraph 3373 thereof reads in part as follows:

"Every such action shall be brought by and in the name of the personal representative of such deceased person: The father . . . may maintain the action for death of a child. . . . The term 'personal representative' as used in this section shall be construed to include any person to whom letters testamentary or of administration have been granted by competent authority. . . . "

Plaintiff did not specifically allege that he was such personal representative, but merely that he was the father and brought the suit as personal representative, and the evidence showed beyond dispute that he was such father, but had never been appointed as executor or administrator by any court.

Counsel for the company contend that when one sues in a representative capacity he must allege as a fact that he is such representative, or the complaint is subject to a general demurrer as not setting up facts sufficient to constitute a cause of action. This court in the case of *Chenoweth* v. *McDowell*, 26 Ariz. 420, 226 Pac. 535, has held in reference to a situation somewhat similar:

"Without the allegation showing the existence of facts giving the right of action to the surviving spouse, the complaint would not state a cause of action in the plaintiff. It but follows that, if the allegation is an essential one, proof thereof is also essential; *a fortiori*, recovery must fail where the proof shows a state of facts negativing the right."

Had plaintiff herein been a stranger to the decedent his complaint would have been bad against a general demurrer, for it did not specifically set up that he actually was a personal representative of the deceased, and, in order to sustain an action as such, he must allege he came within the category. And, since the father is not *ipso facto* the personal representative described in the statute, he is not exempt from the same duty if he desires to maintain his suit as such representative.

But our statute gives the right of action to the father as such as well as to an executor or an administrator; they being the personal representatives named by the statute. The complaint alleges plaintiff was decedent's father, and the proof shows it. If the allegation in regard to a personal representative was stricken, a good cause of action would still be

stated.   As against a general demurrer, we think the defective allegation may be treated as surplusage, and the trial court did not err in its action thereon.

The next point which is raised in several manners by the assignments of error practically comes down to this: Is there sufficient competent evidence in the record, when aided by such presumptions as the law allows in cases of this kind, to take to the jury the question of whether or not the company was guilty of any negligence?   It is admitted by plaintiff that there is no direct proof of any negligent act.   It is contended by him, however, that, where a company is manufacturing and distributing so dangerous an agent as high-tension electric current, through a primary circuit, and at the same time delivering into the houses of some of its customers a low-tension current by means of a secondary circuit designed only to carry such current, it owes a duty to its customers to protect them from the primary or dangerous current, and that the mere proof that the dangerous current escaped from the primary circuit and entered the building of a customer of the latter class in and by itself raises a presumption of negligence.   This contention is denied most strenuously by the defendant company, it claiming that the mere presence of an excessive current in a place where it had no right to be is not, of itself, any evidence of negligence, and that the doctrine of *res ipsa loquitur* cannot be invoked, for the reason that this is, under the pleadings and evidence, a case of plaintiff seeking to recover damages against two defendants wholly independent of each other, when it is a question of which defendant had control of the instrumentality which caused the injury.

We have examined with care every authority cited by both plaintiff and defendant company on this question.   Many of the cases are not in point, but are disposed of upon other propositions than the one we are

now considering. We therefore quote only from the cases wherein the presence of a current of electricity in excess of that which would naturally and properly enter the premises was discussed in some way. The first case is *Denver Consolidated Electric Co.* v. *Lawrence,* 31 Colo. 301, 73 Pac. 39. The complaint charged that plaintiff received "a severe and terrific charge and current of electricity." The defense set up that the fixtures were the property of the plaintiff and he was injured by a negligent use thereof. The court in discussing the question says:

"The fact that the interior fixtures may have been out of repair cannot relieve the company of the responsibility it owes to the public, and owed to the plaintiff, to not permit a deadly current of electricity to enter the house, if within its power to prevent."

In *Smith's Administratrix* v. *Middlesboro Electric Co.,* 164 Ky. 46, Ann. Cas. 1917A, 1164, 174 S. W. 773, the court says, discussing the duty of an electric light company:

"The just rule seems to be that the electric light company should not be responsible for injuries received by persons arising solely from the defects in the wiring and appliances used for electric lighting purposes within their own houses, and which are owned by them, and over which they have entire control. . . . Although such inside wiring and appliances were defective, this would not excuse the company for injuries arising from its sending into the house a dangerous current of electricity, and without which the defects in the inside wiring and apparatus would have been harmless."

In *Welsch* v. *Frusch Light & Power Co.,* 197 Iowa, 1012, 193 N. W. 427, appears the following language:

"While no court goes to the extent of holding that an electric company is an insurer of its patrons or others against all danger of accident or injury from

28 Ariz.—10

its operations, they all agree that it is bound to a very high degree of care. . . . The patron has no right to interfere with the producing plant. He must rely for his safety upon the competence, vigilance, and care of the company to maintain the guards which science and experience have found essential to protect the service wires against an overcharge of the current escaping from the primaries. When this is done, the patron is, to say the least, reasonably safe. . . . It is therefore no unjust hardship upon the producer or distributor to hold him to the duty of making explanation of the presence of an excessive voltage sent into a patron's building, upon some theory consistent with the exercise of the required degree of care. . . . It should, perhaps, be noted in this connection that defendant expresses the opinion that plaintiff's motor operating the washing machine was defective. This does not seem to be very material, for such defect, if any, could not operate to increase the voltage which was being supplied by the company."

In *City of Thomasville* v. *Jones*, 17 Ga. App. 625, 87 S. E. 923, we quote from the syllabus, as following a somewhat peculiar practice in that state, the decision is what is known as a "syllabus opinion":

"Under the proof that a current of 110 to 120 volts would be entirely harmless, . . . and since the evidence disclosed that a voltage of 110 to 120 only should have been permitted to circulate, or would have circulated through the secondary wires or circuit if no negligent contact between the primary and secondary wires had occurred, . . . the jury had the right to infer that the negligence of the defendant . . . brought about the passage of the highly dangerous and unnecessary current over the secondary circuit, and thereby caused the death of the deceased, . . . and the fact that there was a defect in the lamp itself . . . could not affect this necessary conclusion. If a dangerous current of electricity had not been permitted to enter the secondary wires by negligence on the part of the defendant, it could not have been conveyed to the deceased, and no harm could have re-

sulted to him; so that, regardless of any defects in the wiring of the building or in the lamps in use therein, . . . the proximate cause of the homicide was the negligent admission of a dangerous current.''

In *Harter* v. *Colfax Electric Light & Power Co.,* 124 Iowa, 500, 100 N. W. 508, the language of the court is:

''The maxim *res ipsa loquitur* does not apply to such a case as this, for there is no evidence that the accident was due to a dangerous current knowingly, or even negligently, sent into the hotel by the defendant company. . . . Plaintiff's theory seems to be that, when the wire fell upon him, a short circuit was created, which did the damage complained of. This was due, not to defendant sending a dangerous current into the house, but to something over which it had no control, and for which it was not responsible. . . . The evidence shows without dispute or question that, if defendant had sent into the hotel such a current of electricity as it is claimed it did, it would have burned out the fuses in the transformer, destroyed the meter, burned out all the fuses in the fixtures, and destroyed the lights. None of these things occurred, however. . . . The testimony shows it was a physical impossibility for these things to exist if such a current as plaintiff claims passed through him.''

It will be seen from the foregoing the court held there was no evidence that an excessive current at any time entered the hotel.

The case of *Duncan* v. *Fort Dodge Gas & Electric Co.,* 193 Iowa, 1127, 188 N. W. 865, cited by defendant, seems rather to favor plaintiff's position. It is true the court states that the defendant company was not liable for defects in the secondary wiring on the premises where the injury occurred if it did not own or control it, but the court also says:

''No evidence was offered or admitted tending to show any defect or condition in the secondary system

which would tend to cause or to account for the alleged excessive current supplied to the fan,''

—and, referring to and distinguishing the Harter case, says regarding it:

''The court further found there was no evidence of any overcharge or excessive voltage of current sent into the room.''

In the case of *Hill* v. *Pacific Gas & Electric Co.*, 22 Cal. App. 788, 136 Pac. 493, it appears that the current which caused the damage was the current which normally was to be delivered into the premises of a third party, and the accident was caused by a defect of some kind in the apparatus of that third party. There is no contention that the defendant company therein allowed any higher voltage to get into the possession of the third party than it was normally expected to deliver.

In the case of *Peters* v. *Lynchburg Electric Light Co.*, 108 Va. 333, 22 L. R. A. (N. S.) 1188, 61 S. E. 745, the court says that it clearly appears from the evidence no excessive voltage could have entered the premises of the plaintiff, and the accident was due to faulty fixtures under the control of plaintiff himself. In this case the court differentiates the facts from those in *Alexander* v. *Nanticoke Light Co.*, 209 Pa. 571, 67 L. R. A. 475, 58 Atl. 1068, referring to the fact that in the last-named case there was a higher voltage in the secondary circuit than it should have carried. So, also, in the case of *Minneapolis General Electric Co.* v. *Cronon*, 166 Fed. 651, 92 C. C. A. 345, 20 L. R. A. (N. S.) 816, and the case cited therein, there is no evidence that the defendant allowed an excessive electric current to enter premises from which it was its duty to exclude such current. The case of *Cecil & Co. et al.* v. *Stamford Gas & Electric Co.* (Tex. Civ. App.) 242 S. W. 536, does state baldly:

"Nor could a presumption of negligence in permitting the overload of electricity to enter the building be predicated upon the finding that it did so enter."

This, so far as we can discover, is the only case which seems directly to deny plaintiff's contention on facts anywhere similar to those in the case at bar.

Electricity as an instrumentality in common use is comparatively a new thing, and the law governing it is in a state of development. The general principles taken from other circumstances and subjects must necessarily be modified to fit the new conditions. The electric current cannot be seen nor heard. To the ordinary person its presence is only apparent when he comes in contact with something charged therewith, and, if the current be of a strength which will kill or do great bodily harm, the injury has occurred without any chance on his part to avert it. As is stated in the case of *Indianapolis Light & Heat Co.* v. *Dolby,* 47 Ind. App. 406, 92 N. E. 739:

"The high electric current is more deadly than any tiger. It kills by a touch, and its presence is only discovered when the mischief has been done, so that those who generate such currents ought on principle to be made insurers against damages thereby done."

The authorities do not go so far at present, however, and we do not extend the law to that degree, but we do say that, in view of the extremely dangerous nature of the high-tension electric current, and of the fact that, if proper safeguards are used by those who generate and distribute it, it is practically impossible for it to escape from its original conductor, except through some accident or instrumentality which can be easily discovered, and most easily by the party in control of the distributing system, that it is but just when it appears from the evidence in a case that such current has escaped from the place where it should be confined, there is a legal presumption that the escape

is *prima facie* due to the negligence of the party in control of such place, subject, of course, to the presumption being rebutted in the proper manner.

Does the evidence fairly support plaintiff's contention that there was an escape of an excessive primary current from the lines under the exclusive control of defendant company into the secondary circuit in the Buehman studio and such escape was the cause of the accident? It must be remembered that it is practically impossible to prove the presence of an electric current except by circumstantial evidence. It cannot be directly apprehended by any of the five senses. We determine its presence only by the effects which that presence produces. We think there is ample evidence in the record to justify the jury believing: First, that there was present in the Buehman studio an electric current in excess of 1,000 volts; second, that such current could have come from nowhere except the primary circuit of defendant company; and, third, that a current of such intensity was not designed by either the company or Buehman to enter his place of business under any circumstances, nor would the secondary circuit or the fixtures attached thereto have safely carried such a current, no matter what their condition was. We also think the evidence is ample to justify the finding by the jury that it was the excessive current of electricity which caused the death of decedent.

Of course, if defendant company's negligence was a concurrent cause of the accident, it is immaterial whether it also was proved Buehman was negligent, either by the pleadings or the evidence. 29 Cyc. 497.

Our rulings above dispose of all except two of the assignments of error. Of these the first is an alleged error in admitting certain broken glasses and lamp globes in evidence. We have examined the testimony in regard to these, and are of the opinion they were

properly admitted. The second is that the court erred in refusing to instruct the jury that, if the light company's equipment was in good condition and Buehman's equipment was defective and permitted the electricity to escape by reason of the defect, and that deceased came in contact therewith plaintiff could not recover, and that notwithstanding Buehman was dismissed as a defendant, the fact of his negligence remained in the case, and was to be considered, was error. Instructions must be considered as a whole. The court was very careful to tell the jury that, if they found the injury would not have occurred except for the alleged defects in Buehman's appliances and machinery, no matter what the excessive voltage might be, the verdict must be for the defendants, and that, if he came to his death as a result of an injury caused by the defective condition of the equipment in the building, plaintiff could not recover. We think this covers the instructions asked by defendant company as fully as they were entitled to.

Since there was evidence sufficient, when taken into consideration with the presumption of law which we have declared, to sustain the verdict of the jury, and there was no prejudicial error in the rulings of the trial court on points of law, the judgment is affirmed.

McALISTER, C. J., and ROSS, J., concur.