[Civil No. 3492. Filed May 2, 1935.]

[45 Pac. (2d) 656.]

LOUISE MILLER DOCKERY, in Her Own Right, LAWRENCE MILLER, ELWYN MILLER and RICHARD MILLER, Minors, By and Through LOUISE MILLER DOCKERY, Their Guardian ad Litem, Appellants, v. CENTRAL ARIZONA LIGHT & POWER COMPANY, a Corporation, and FIDELITY & DEPOSIT COMPANY OF MARYLAND, a Corporation, Appellees.

Mr. L. C. McNabb and Mr. Allan K. Perry, for Appellants.

Messrs. Armstrong, Kramer, Morrison & Roche, for Appellee Central Arizona Light & Power Company.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellee Fidelity & Deposit Company of Maryland.

LOCKWOOD, C. J.—Louise Miller Dockery, in her own right, and Lawrence Miller, Elwyn Miller and Richard Miller, through Louise Miller Dockery, as their guardian *ad litem,* brought suit against Central Arizona Light & Power Company, a corporation, hereinafter called the company, Jane Kistler, hereinafter called the administratrix, and her official bondsman, Fidelity & Deposit Company of Maryland, a corporation. An original complaint and a first, second and third amended complaint were filed. Various demurrers and motions were interposed to each of the complaints, but we need consider only the demurrers to the third amended complaint. After they were presented, the following order was entered: "It is hereby ordered that the demurrers, general and special, are hereby sustained without leave to amend, on the ground that the Third Amended Complaint constitutes and is a collateral attack upon the Judgment of the Probate Court referred to in said Amended Complaint," and there-

after a judgment was rendered dismissing the action, and from the judgment this appeal was taken.

There are four assignments of error which raise two questions of law, the first being whether the court erred in sustaining the demurrer without leave to amend, and the second whether the complaint constituted a collateral attack upon a judgment.

■ We consider the first question. Section 3740, Revised Code 1928, reads as follows:

"§ 3740. *Amendments*. All pleadings may upon leave of the court be amended at any time, upon such terms as the court may prescribe, or the same may be amended without such leave, not less than five days before trial, by serving the adverse party with a copy of such amended pleading."

And it is contended that this confers upon a plaintiff the absolute right to amend a complaint when a demurrer is sustained. In the case of *Miller* v. *Arizona Bank et al., ante,* p. 297, 43 Pac. (2d) 518, just decided, we held that under this section the right of filing new pleadings was not absolute, and that, when a demurrer had been sustained and an amended complaint was tendered which was the same in legal effect as the one to which the demurrer had just been sustained, it was not, within the meaning of the statute, an "amended pleading," and that the court might proceed to a judgment of dismissal, disregarding the new complaint, but expressly reserved the question as to whether the statute applied only to voluntary amendments made by the parties, or also to amendments made after a demurrer is sustained. If the complaint shows on its face it cannot be amended to meet the defect, it would be a futile thing to allow an attempt to amend. If, on the other hand, it is susceptible of amendment, after three unsuccessful attempts to state a cause of action it woud seem that plaintiff should at least tender the proposed amend-

ment to the court and ask to have the order denying the right to amend vacated, or he will be deemed to have waived any rights of amendment he might have. Any other holding would make a travesty of pleading. We hold, therefore, that, if the defect in the complaint, which causes it to be demurrable, is of such a nature that it shows on its face that it cannot be amended to state a cause of action, section 3740, *supra,* is not applicable, and, if an amendment can be made to meet the defect, the party must ask leave to tender it, or he will be deemed to have waived any rights he might have had. Since the record does not show such a tender was made, there is no reversible error in the order denying leave to amend.

The demurrers were sustained on the ground that the complaint shows the action is a collateral attack upon a judgment. The questions, therefore, are: (a) Does it attempt to make a collateral attack upon a judgment? and (b) are the circumstances alleged in the complaint such that an attack of this nature may be made?

The complaint itself is composed of some twenty-nine typewritten pages, and we therefore do not attempt to set it forth in full, but merely summarize so much of it as we consider necessary in order to consider properly the appeal. It is of course true that, when the sustaining of a demurrer is under consideration, we must, for the purpose of the appeal, assume the facts stated in the complaint to be true. This rule, however, only applies to such facts as are well pleaded, and does not apply to conclusions of law or inferences which might be drawn from, but are not necessarily implied by, the actual facts pleaded.

The complaint contains four causes of action, but they are of such a nature that the principles of law applicable to one are unquestionably applicable to

the other three, so we summarize only the first one. After alleging that the plaintiffs are the sole heirs at law and next of kin of Richard L. Miller, Edna Frances Miller, Samuel Wesley Miller, and Harold Eugene Miller, deceased, and that there is now no administrator or executor of the estates of the various parties deceased, the complaint stated that Richard L. Miller and Edna Frances Miller were respectively father and mother of plaintiffs and of Samuel, Wesley and Harold Eugene Miller, and on or about August 21, 1928, were living, together with their children, near the city of Phoenix. At that time defendant company was engaged in the transmission of electric power by means of wires strung on poles, some of which wires passed near the Miller residence. The company had negligently failed to provide proper cut-offs for its power lines aforesaid in case the wires became dislocated, and, following a heavy storm, a certain power wire carrying 4,000 volts of electricity became loose from its fastenings and fell into the Millers' yard. The ground of the yard had become very wet as a result of the storm, so that, when the wire came in contact with it, the ground became heavily charged with electricity. Richard L. Miller, about 10 o'clock that night, left his house intending to go to work, and stepped out upon the wet earth attempting to get into his automobile which was parked in the yard, and an electric current was discharged into his body from the wet ground and wire aforesaid, which instantly killed him. His wife and two minor children were also killed about the same time and in the same manner. The company believed that it was liable by reason of such negligence in heavy damages to the estate of the decedents, and therefore attempted to evade its liability in the following manner: Defendant Kistler was appointed by the superior court of Maricopa county as

the adminstratrix of the estates of the various decedents and duly gave bond therefor. In the meantime the daily press of Phoenix appealed to the general public for funds for relief of the children so orphaned, stating that whatever was contributed by the public would go directly to the children and not to the estates of the decedents. The sum of $4,455.75 was contributed by the public, and the Kiwanis Club of Phoenix accepted the duty of acting as trustee of said fund for the benefit of the children. The officers of the company and its attorney were prominent members of the Kiwanis Club, and by their influence secured joint control of this fund for which the club was acting as trustee, and secured the passage of a resolution disposing of the fund through the club, according to a plan suggested by the president of the company. The administratrix and her attorney agreed to accept $8,500 from the company in settlement for the deaths of all the decedents, as aforesaid. The administratrix further agreed that the company should use the funds collected by the Kiwanis Club to purchase an annuity policy for the three youngest of the plaintiffs herein, and should deliver said policy to the administratrix as part of the payment under the settlement. It is further alleged that all of the parties knew that the administratrix and her lawyer would draw fees as a result of the aforesaid action on the basis of various moneys which could not become lawfully a part of the estate of the deceased persons.

Thereafter the administratrix, her attorney and the defendant company appeared before the probate court and secured an order from the court approving the settlement, as aforesaid, the petition for the order showing on its face that the company was to use funds belonging to the minors, to wit, the annuity, to pay off a claim which the estates of the de-

ceased persons had against it. As a result of this agreement between the administratrix and her attorney and the company and the Kiwanis Club, the funds held by the club were used to purchase an annuity policy, as aforesaid, and the policy was delivered to the administratrix, and was accounted for by her as a part of the estate of the four decedents as a result of the settlement with the company. There are many general allegations that all the aforesaid conduct was fraudulent, wrongful, unlawful and collusive, but we think what we have said states fairly and fully all the allegations of fact contained in the complaint. The prayer for relief was that the order of the probate court approving the settlement be declared a fraud on its face and void and of no effect; and that the plaintiffs have judgment against all of the defendants for $7,000, the amount of the administratrix's bond, and against the administratrix and the company for an additional $33,000.

The other three causes of action were based on the deaths of Edna Frances Miller, Samuel Wesley Miller and Harold Eugene Miller, respectively, and the allegations contained therein were substantially the same as those of the first cause of action, except for the changes necessary on account of the different deaths. If any right of action on account of these deaths ever existed, they were rights which inured to the benefit of the estates of the decedents and not to any of the plaintiffs herein. Sections 944 and 945, Rev. Code 1928; *De Amado* v. *Friedman,* 11 Ariz. 56, 89 Pac. 588; *Southern Pacific Co.* v. *Wilson,* 10 Ariz. 162, 85 Pac. 401; *Phoenix Ry. Co.* v. *Landis,* 231 U. S. 578, 34 Sup. Ct. 179, 58 L. Ed. 377. All of the decedents died intestate. The administratrix was therefore the proper person to prosecute any claim which the estates might have for the death of their respective decedents. But claims of this kind

may be settled without prosecution to judgment whenever the court which has jurisdiction of the estate deems it to be just and for the best interests of the estate. Section 4006, Rev. Code 1928. Under the law of Arizona, probate matters are handled by the superior courts. Since these courts are courts of record, any order made by them in the exercise of any portion of their jurisdiction has the same dignity and is entitled to the same presumption of jurisdiction as judgment of courts of general jurisdiction. *Varnes* v. *White,* 40 Ariz. 427, 12 Pac. (2d) 870; *Costello* v. *Cunningham,* 16 Ariz. 447, 147 Pac. 701; *In re Schuster's Estate,* 35 Ariz. 457, 281 Pac. 38. It is obvious, therefore, that, so long as the order of the superior court of Maricopa county confirming the settlements made in the four estates stands, plaintiffs may not maintain any action on account of the death of the decedents by reason of the alleged negligence of the company. Plaintiffs apparently realize this, for a large portion of their complaint is devoted to an attack on these orders, and the first part of the prayer for relief is that they be declared void and of no effect. Their theory of attack seems to be that since, under our form of pleading, both equitable and legal relief may be sought in the same complaint, the setting aside of a judgment on the grounds of fraud being a prerequisite to the bringing of a suit for damage, both forms of relief may be sought in the same action. While it is true that our statute (Rev. Code 1928, § 3737) has abolished all distinctions in the forms of pleading, and equitable and legal relief may be sought in the same action, the substantive principles of law and equity, and the general rules of procedure governing such actions, in so far as form and nature of relief still exist, and the question of whether the action is a direct proceeding to attack a judgment,

or one merely collateral, must be determined by the general principles of law and equity.

In this action it is obvious from the complaint that the real purpose is to secure a judgment against the administratrix and the company for damages for the death of the decedents by reason of the wrongful act of the company. In order to maintain such an action, it was necessary to set aside the settlement previously made in the superior court. This latter relief was merely ancillary to the first. In the case of *Henderson* v. *Towle*, 23 Ariz. 377, 203 Pac. 1085, 1087, the plaintiff sued the defendant for damages arising out of the settlement and dismissal of a former action, alleging that the settlement and dismissal was procured by fraud on the part of the defendant. In other words, the plaintiff sought damages for the wrongful act of the defendant, and as ancillary thereto the overturning of the judgment of dismissal. The question arose as to whether this was a direct or collateral attack, and the court said:

"As the action is not brought for the sole purpose of impeaching or overturning the former judgment, but has also for its object an independent relief or result, the attack made herein upon the former judgment is a collateral one."

In the case of *Bell* v. *Bell*, 44 Ariz. 520, 39 Pac. (2d) 629, 631, in discussing the question of the difference between a collateral and a direct attack, we said:

"It will be observed that the attack was made in the same proceeding in which the judgment was rendered, that it was made by a motion to vacate the particular judgment attacked, and that its direct and only purpose was to set aside the judgment itself and not to secure, directly at least, any other relief."

And we held that such a proceeding was a direct attack and, inferentially, that, if other relief was

sought, it would not have been direct. We have thus in the past definitely laid down the rule in Arizona that, where an action has for its primary purpose the obtaining of independent relief, and the vacating or setting aside of a judgment is merely incidental thereto, such action is not a direct, but a collateral, attack upon the judgment. Many cases have been cited to us by counsel for plaintiffs which it is contended lay down a different rule of law from that which we have just stated. Counsel for defendants contend that these cases are either inapplicable to facts like those found in the present case or else do not bear out the contention of plaintiffs. We think it unnecessary to consider which are right in their contention. When a proposition of law has never been definitely settled by this court, the decisions of other courts of last resort are always to be considered carefully, for the purpose of determining which is the better rule of law to be adopted for this jurisdiction, but, when we have, after mature consideration, laid down positively and definitely certain legal principles so that they have become *stare decisis,* we think that decisions from other states have very little weight, unless the rare situation arises where we think it advisable to reconsider the application of the rule of *stare decisis.* We think that no showing has been made in the present case which would warrant us in reconsidering the rule of law already adopted by us on the question of when an attack upon a judgment is collateral and not collateral. We hold, therefore, that the present action is a collateral attack on the order of settlement involved.

But, say plaintiffs, a collateral attack on a judgment is sometimes permissible. This is true, and we therefore consider under what circumstances it is permitted. This question has been before this court several times. In the case of *Tube City Mining &*

*Milling Co.* v. *Otterson,* 16 Ariz. 305, 146 Pac. 203, 205, L. R. A. 1916E 303, we had under consideration the question of when and how a judgment of a court of record may be attacked collaterally. Therein we said:

" . . . As the present action is a collateral attack on the former judgment, it must be made to appear that such judgment was rendered without jurisdiction and is void. It is clear that the merits of the foreclosure suit are not now here for consideration. We are not here perplexed with the question whether the judgment of the superior court was correct or incorrect, but the scope of the inquiry is circumscribed to determine if the superior court had jurisdiction to pass upon and determine the validity of the lien. If it had jurisdiction, the judgment cannot be attacked collaterally. If the court has jurisdiction of the cause, it has jurisdiction to pass judgment on the question of the sufficiency of the claim for lien and the sufficiency of the complaint to state a cause of action, and, even if its judgment on these questions be wrong, it is only error. Neither its judgment on either question nor its judgment on the merits of the cause is open to collateral attack. . . .

"The test of jurisdiction is whether or not the tribunal has power to enter upon the inquiry; not whether its conclusion in the course of it is right or wrong. *Foltz* v. *Ry. Co.,* 60 Fed. 316, 8 C. C. A. 635; *Board of Commissioners of Lake County* v. *Platt,* 79 Fed. 567, 25 C. C. A. 87.

"In the Foltz case the conclusion of the court was expressed in these words:

" 'Jurisdiction of the subject-matter' is the power to deal with the general abstract question, to hear the particular facts in any case relating to this question, and to determine whether or not they are sufficient to invoke the exercise of that power. It is not confined to cases in which the particular facts constitute a good cause of action, but it includes every issue within the scope of the general power vested in the court, by the law of its organization, to deal with the abstract question. Nor is this juris-

diction limited to making correct decisions. It empowers the court to determine every issue within the scope of its authority according to its own view of the law and the evidence, whether its decision is right or wrong, and every judgment or decision so rendered is final and conclusive upon the parties to it, unless reversed by writ of error or appeal, or impeached for fraud. . . . ''

In that case, however, the specific question of whether a court of equity may sustain a collateral attack upon a judgment, when the attack is made upon the grounds of fraud, was not determined, and it is urged by plaintiffs that this is an exception to the general rule that a collateral attack on a judgment can be only made when the judgment is void upon its face. In support of this they rely strongly upon the case of *Weyant* v. *Utah Savings & Trust Co.,* 54 Utah 181, 182 Pac. 189, 9 A. L. R. 1119. They also cite to the same effect many other cases.

Counsel for defendants, on the other hand, claim that the cases cited by plaintiffs do not sustain the position which they take. We think it unnecessary to discuss or analyze these cases to determine whether plaintiffs or defendants are right in their contention as to their holding, for the law of Arizona on this point has been very definitely and positively determined by this court more than once.

In the case of *Henderson* v. *Towle, supra,* we said:

''It is the general rule that it is not permissible for a party or privy to attack a judgment in a collateral proceeding on account of fraud. Black on Judgments, § 290. This rule is but a particular application of the more comprehensive one that—

'' 'A judgment rendered by a court having jurisdiction of the parties and the subject-matter, unless reversed or annulled in some proper proceeding, is not open to contradiction or impeachment in respect to its validity, verity, or binding effect by parties or

privies, in any collateral action or proceeding.' 23 Cyc. 1055.

"As the law recognizes no distinction between the effect of a judgment entered upon the agreement, consent, or compromise of the parties in its effect as a bar or estoppel, and the effect of one rendered upon contest and trial (23 Cyc. 1134, 728, 729; Black on Judgments, § 706; *Crossman* v. *Davis,* 79 Cal. 603, 21 Pac. 963; *Merritt* v. *Campbell,* 47 Cal. 542), so likewise it recognizes no distinction between such judgments when the attempt is made to impeach or contradict them on collateral attack.

" 'The rule against collateral impeachment applies to every judgment, order, decree or judicial proceeding, of whatever species, that is not absolutely void.' Black on Judgments, § 246.

"And it is established by the weight of authority that judgments, such as the one here in question, are not subject to collateral attack for fraud (*Clark* v. *Southern Can Co.,* 116 Md. 85, 81 Atl. 271, 36 L. R. A. (N. S.) 980; *Morris* v. *Travelers' Ins. Co.,* (C. C.) 189 Fed. 211; *Costello* v. *Cunningham,* 16 Ariz. 447, 147 Pac. 701; Black on Judgments, § 290 et seq. [and cases cited]), or for any other reason than a lack of jurisdiction over the person or subject-matter which is apparent on an inspection of the record itself, *Tube City Mining etc. Co.* v. *Otterson, supra.*"

That this decision was well considered is shown by the fact that only two months later in the case of *Le Baron* v. *Le Baron,* 23 Ariz. 560, 205 Pac. 910, 913, we again had a similar question before us, and said:

" . . . The proceedings are therefore within the rule which forbids a collateral attack to be made upon a judgment by a party thereto for any cause, including fraud, unless the judgment is void on its face. *Tube City Min. & Mill. Co.* v. *Otterson,* 16 Ariz. 305, 146 Pac. 203, L. R. A. 1916E 303; *Henderson* v. *Towle,* [23 Ariz.] 377, 203 Pac. 1085."

And in the same case we discussed the question of how and when a decree might be attacked on the

ground of fraud showing, in substance, that the attack must be direct.

Again in *Berman* v. *Thomas,* 41 Ariz. 457, 19 Pac. (2d) 685, 687, we said:

" . . . The proceedings are therefore within the rule which forbids a collateral attack to be made upon a judgment by a party thereto for any cause, including fraud, unless the judgment is void on its face. *Le Baron* v. *Le Baron,* 23 Ariz. 560, 205 Pac. 910."

In view of these very positive and repeated holdings by this court, it would be a mere waste of time and space for us to attempt even to discuss the decisions of any other courts upon the point. The law of Arizona is, and for long has been, that a judgment may not be attacked collaterally even for fraud unless it is void upon its face. Since this is a collateral attack upon the judgment, we consider whether the order shows upon its face that it was void.

The complaint shows affirmatively that the superior court of Maricopa county had jurisdiction of the subject-matter of the order, to wit, the settlement of an alleged claim of an estate of a decedent against a party for negligence resulting in the death of the decedent. Sections 944 and 945, *supra.* It also had jurisdiction of the persons involved in the settlement, to wit, the administratrix of the estate, and the party against whom the alleged claim was presumed to exist, the company. It had jurisdiction to make this particular order which it did authorizing a settlement of the claim. Section 4006, *supra.* As we said in *Brecht* v. *Hammons,* 35 Ariz. 383, 278 Pac. 381, 382:

" . . . Three things must concur or a judgment is void upon its face, and may be attacked at any time. The court must have (a) jurisdiction of the subject-

matter of the case, (b) jurisdiction of the persons involved in the litigation, and (c) jurisdiction to render the particular judgment given. If these three matters concur, even though the judgment be erroneous or wrong, so that it could be reversed on appeal or set aside on direct attack, it is not void as against collateral attack.''

See, also, *Bell* v. *Bell, supra; Lisitzky* v. *Brady,* 38 Ariz. 337, 300 Pac. 177.

■■■ We think the complaint shows conclusively upon its face that the orders in question were not void for want of jurisdiction, and they cannot therefore be attacked collaterally.

■■■ But assuming, for the sake of argument, that we might consider this a direct attack upon the order of settlement, does the complaint set up facts which would justify a court of equity in acting? We have held repeatedly that, when six months has expired after the making of a final order or rendition of judgment, the trial court is without jurisdiction to vacate or set it aside, except upon the ground of fraud. It is urged by plaintiffs that this is the very ground upon which the judgment is being attacked. Let us consider, then, the nature of the fraud which must be shown in order to give jurisdiction to a court of equity to set aside a judgment or to suspend its execution. The general rule is well stated in 15 R. C. L. 762, as follows:

''215. Necessity that Fraud be Extrinsic or Collateral.—Not every fraud is sufficient to move a court of equity to grant relief from a judgment, but in order to set aside a judgment alleged to have been obtained by fraud, it must appear that fraud was practiced in the very act of obtaining it. The acts for which a court of equity may, on account of fraud, set aside or annul a judgment at law between the same parties have relation only to fraud which is extrinsic or collateral to the matter tried by the first court, and not to fraud in the matter on which the

judgment was rendered. Relief is granted for ex-trinsic fraud on the theory that by fraud or deception practiced on the unsuccessful party, he has been pre-vented from fully exhibiting and trying his case, by reason of which there never has been a real contest before the court of the subject matter of the suit. The reason of the rule refusing relief in other cases of fraud seems to be based upon the idea that there must be an end to litigation, and therefore an issue which has been tried and passed upon by the first court should not be retried in an action to enjoin the judgment; otherwise, litigation would be inter-minable. Extrinsic or collateral fraud is defined to be actual fraud, such that there is on the part of the person chargeable with it the *malus animus,* the *mala mens* putting itself in motion and acting in order to take an undue advantage of some other person for the purpose of actually and knowingly defrauding him. In simpler terms it has been said that a fraud is extrinsic or collateral, within the meaning of the rule, when it is one the effect of which prevents a party from having a trial, or from presenting all of his case to the court, or which operates, not upon matters pertaining to the judgment itself, but to the manner in which it is procured. . . . ''

This general statement of the law is upheld by almost innumerable cases. *Dragoon Marble etc. Co.* v. *McNeish,* 28 Ariz. 96, 235 Pac. 401; *Eisenmayer* v. *Thompson,* 186 Cal. 538, 199 Pac. 798; *Clark* v. *Clark,* 64 Mont. 386, 210 Pac. 93; *Stutsman* v. *Williams,* 87 Okl. 64, 209 Pac. 406; *Garrett Biblical. Institute* v. *Minard,* 82 Kan. 338, 108 Pac. 80.

In the case of *United States* v. *Throckmorton,* 98 U. S. 61, 66, 25 L. Ed. 93, the Supreme Court of the United States, after holding that equity would only intervene to relieve from a judgment in cases of ex-trinsic fraud, and giving examples of what such fraud consisted of, said:

''On the other hand, the doctrine is equally well settled that the court will not set aside a judgment

because it was founded on a fraudulent instrument, or perjured evidence, *or for any matter which was actually presented and considered in the judgment assailed.*" (Italics ours.)

Let us examine the allegations of the complaint and see whether any extrinsic fraud is alleged. Leaving out the various statements of legal conclusions, the fraudulent conduct is alleged to have been as follows: The officers of the company and its attorney were prominent and influential members of the Kiwanis Club, and through their influence they secured a resolution of the club directing that the fund collected by it for the benefit of the minor plaintiffs herein be used to purchase an annuity for them. The administratrix, her attorney, and the company agreed upon a settlement of $8,500 for the total damage due to all the different estates of the deceased persons as a result of the negligence of the company; and the annuity purchased with the funds of the Kiwanis Club was accepted by the administratrix as part payment on the settlement of $8,500, as above set forth, and that she took credit for such annuity in her settlement of her final account as a payment on the settlement with the company. The reason alleged for the administratrix making a settlement which was claimed to be contrary to the interests of the estates of the decedents was that she would draw fees on the basis of the money secured by the Kiwanis Club. The vital part of the order of settlement was that the claims for damages were settled in consideration of the payment of $8,500 by the company. It seems to us that the question of how the money was to be obtained to make the payment was a matter which could not affect the validity of the settlement itself, nor can we see, since the estates were to receive $8,500 altogether in any event, that it would make any difference in the amount allowed by the probate

court as fees to the administratrix just where the money came from. We think that the only kind of fraud which could by any possibility have been material so far as the order of settlement, which it is sought to have set aside, is concerned, is one which would have misled the court into approving a settlement for a less amount than could reasonably have been expected to be secured for the estate through litigation, and that the various things which it is alleged the officers of the company and the administratrix did go to the source from which the payment of the settlement was to be made rather than the amount of the settlement itself. If, as a matter of fact, the court was misled by the fraudulent conduct of the company and the administratrix into allowing credit to the latter in the settlement of her final accounts for certain sums for which she was not legally entitled to credit, the proper remedy would have been an attack at the proper time and in the proper manner upon the decree of settlement of the final account rather than on the order approving the compromise of the claim against the company.

But, even assuming that the various allegations of the complaint in regard to fraud do show that the company and the administratrix attempted to make a collusive settlement against the claims of the company, to the injury of the estates of the decedents, the complaint shows affirmatively that all of these facts, which it is alleged were fraudulent, were shown upon the face of the petition for the order of settlement, which was presented to the court in order to secure the order approving the settlement.

The complaint alleges:

" . . . The petition for the order showed, that it was collusively obtained and showed that the Central Arizona Light & Power Company was accepting funds belonging to these minors to pay off a claim

against it by the estates of said deceased persons and that it was depriving said children of said funds, which belonged to them individually, and knew that Jane Kistler and her lawyer would draw fees on the basis of said sum of money which could not become lawfully a part of the estates of said deceased persons and both parties knew that the interests of the trustee, as administratrix, and her attorney, were by such a settlement in conflict with the interests of the orphans, these plaintiffs, to whom they owed uncompromising fidelity and by reason of said funds being used in said settlement, made the order void on its face and of no effect. . . . ''

As we have previously pointed out, the extrinsic fraud which justifies a court of equity in setting aside a decree is one which prevents the party claiming to be injured from having a trial or presenting all his case to the court, and that in the language of the Supreme Court of the United States it does not apply to ''any matter which was actually presented and considered in the judgment assailed.''

 It appears to us from the allegations of the complaint that the petition for the order in question set forth the very facts upon which the claim of fraud was based, that the probate court considered these facts, and, knowing them, made the order upon the basis of the petition. Since there is no allegation in the complaint of any act on the part of either the administratrix or the company whereby the court was deceived or misled, so far as the approving of the order of settlement for $8,500 was concerned, a court of equity cannot set aside that order on the grounds of extrinsic fraud.

There are allegations in the complaint which, if true, would have justified the probate court in refusing to approve the final account of the administratrix, and would have authorized an action against the company to recover from it the amount which it had failed to pay upon the alleged settlement for $8,500,

but nothing appears upon the face of the complaint which would authorize a court of equity to set aside the order approving a settlement for such amount, and, so long as that order stands, plaintiffs may not maintain an action for damages against the company for the acts or negligence alleged in the complaint which resulted in the death of decedents.

 If the judgment of the trial court is the only one which could properly be rendered, it is immaterial on an appeal whether it was made on the proper grounds. Since the complaint failed to state a cause of action, whether the attack on the judgment was direct or collateral, and since no proper effort was made to amend it so that it would state a cause of action, the judgment of the superior court of Maricopa county is affirmed.

ROSS, J., concurs.

McALISTER, Judge, Concurring Specially. — I concur in the conclusion that the judgment of the trial court should be affirmed, but desire to give an additional reason for this view.

It is the contention of appellants that the orders of the trial court approving the settlement of the claims of the estates against the appellee, the Central Arizona Light & Power Company, for the damages suffered by these estates as a result of the deaths of the decedents were void on their face, because they state that the appellant admitted liability in the sum of $8,500 and agreed with the administratrix to discharge it by paying $4,044.25 in cash and by purchasing an annuity policy for $4,455.75 for the children of the deceased with the money contributed by the public for their benefit and delivering it to her as administratrix of the estates; that this was done, and that thereafter the annuity policy was treated as a part of the estate, the fees of the administratrix

and her attorney being paid upon a valuation of $8,500, more than one-half of which was the money belonging to the children.

If these allegations are true, and they must be so regarded in disposing of the demurrer, it is clear that the court should not have entered the orders, but it is not necessary in this action to determine whether they were merely erroneous or void on their face, because in neither instance could the appellants take advantage of them. The right to damages for wrongful death rests in the estate and an action to recover them can be brought only by the personal representative of the deceased, unless the death be that of a child whose parent or parents are living or of a ward. In the first instance the father, or in case of his death or desertion of his family, the mother, and in the second, the guardian, may bring the action. Sections 944 and 945, Revised Code of 1928; *Tucson Gas, E. L. & P. Co.* v. *Doe,* 28 Ariz. 140, 236 Pac. 464; *Estate of Lister,* 22 Ariz. 185, 195 Pac. 1113. At no time did the appellants have a cause of action against appellee for the death of the decedents, and this being true, it was as a matter of law wholly immaterial to them that the Central Arizona Light & Power Company and the administratrix by fraud and collusion extinguished the causes of action which the estates had against the company for these deaths. The fact that appellants were the sole heirs of the estates did not make, or even permit them to become, parties plaintiff in an action for damages for the wrongful death of the decedents, and this being true it necessarily follows that they could not sue for damages the estates may have suffered through the extinguishment in any way of this right of action. The right to sue not being in them, they could have had no interest in its extinguishment. The law of this state does not regard the heirs of

an estate, but its representative, as the party in interest in actions of this character. The effect of section 945, *supra,* is to place those who inherit an estate consisting of a right of action for wrongful death in a different position from that of .heirs generally, and inasmuch as the only person who could have brought such an action was the personal representative of the deceased and the administration of the estate had long since closed, the only course appellants could have properly pursued at that time was to procure the appointment of a representative of the estate, an administrator *de bonis non.* If the Lord Campbell's Act of this state were the same as that of California, which provides that the action may be brought by the heirs or the personal representatives of the deceased, the appellants could have brought the action. Section 377, Calif. Code of Civil Procedure.

However, even though the appellants were not the proper parties in an action, either for damages for the wrongful deaths or for damages the estates may have suffered as the result of an extinguishment of the former through collusive and fraudulent conduct, there is nothing now, nor will there be during the period of limitation which begins to run when the appellants reach the age of twenty-one years, to prevent them from recovering the money contributed to them by the people and which, according to the allegations of the complaint, was delivered to the administratrix in discharge of a part of the Central Arizona Light & Power Company's admitted liability of $8,500. This fund belonged to the children and could in no way have become an asset of the estates of decedents, but if, notwithstanding this, it was paid to the administratrix in discharge of the $8,500 *pro tanto* and later distributed to the appellants as heirs of the estates, it was diverted from the

458

purpose for which it was contributed and can be recovered by its owners, the appellants, in a proper action.